ABNER WOODWARD *vs.* ALMIRA P. LEAVITT, executrix.

On the trial of an action upon a promissory note, which is defended on the ground of its payment to the plaintiff, evidence is immaterial that the defendant was advised by counsel that the defence could not be maintained against a third person, who had brought a prior suit on the note, claiming to have bought it before maturity.

The schedule of assets filed by an insolvent debtor is competent evidence that at the time of filing it he did not own property not included therein.

In an action upon a promissory note, which is defended on the ground of its payment to the plaintiff before maturity, he cannot prove that, after the time of the alleged payment, he offered to transfer the note to a third person without any injunction of secrecy, and the defendant was told of the fact.

On the trial of an action upon a promissory note, which is defended on the ground of its payment, a witness for the plaintiff, after testifying in cross-examination that the question whether the note was paid was much discussed in the community, and he had taken part in such discussions, was asked by the defendant what was his theory of the way in which the plaintiff happened to hold the note if it was paid, and answered that he did not give any theory about the note, but supposed, as others did, how a case might come up. *Held*, that the plaintiff had no ground of exception.

On the issue whether a party repurchased with cash a promissory note from a person to whom he alleged that he previously sold it, evidence is competent that about the time of the alleged repurchase he was an insolvent debtor and a borrower of money to compromise with his creditors, as having some tendency to show that he had not the means with which to pay for the note.

On the trial of an action upon a promissory note, which the defendant contended that he had paid on a certain day, the plaintiff put in evidence that on a certain later day, in front of a tavern which the plaintiff had kept, the defendant said to an insurance agent that he had already told him twice that he should not get his life insured until he paid up the plaintiff, and at the same time pointed to the tavern. Thereupon the defendant was permitted to prove, against the plaintiff's objection, that the plaintiff sold and conveyed the tavern before the date fixed for this conversation. *Held*, that the plaintiff had no ground of exception.

In an action on a promissory note, which is defended on the ground of its payment to the plaintiff before maturity, it appeared that when it matured an assignment of the plaintiff's estate had been made under the insolvent law; and though one of the assignees was a witness on the trial, there was no evidence that the maker of the note ever spoke of it to either of them. *Held*, that the plaintiff had no ground of exception to the refusal of the judge to restrain the defendant from arguing to the jury on this absence of evidence as confirming the defence.

Rulings on the competency of evidence offered upon a motion for a new trial are subject to revision on exceptions.

The affidavit of a juror is admissible in denial or explanation of acts and declarations of his outside of the jury room, evidence of which has been introduced in support of a motion for a new trial on the ground that he had formed and expressed an opinion before the trial.

Affidavits of jurors cannot be received, even in support of a verdict, to prove the part taken by any of them in the discussions and votes in the jury room.

**On** a motion for a new trial upon the ground of the prejudice and bias of one of the jurors, evidence was introduced that before the trial he expressed an opinion of the merits of the case, and did not disclose it upon being interrogated by the court before the case was opened. *Held*, that he might testify, in reply, that the opinion which he expressed was based wholly upon hearsay, and that when he was interrogated he did not remember having expressed it and was conscious of no bias; but that his testimony that he did not vote against the plaintiff till all the other jurors had done so, and the testimony of other jurymen that he did not take part in the discussions in the jury room or attempt to influence them, was inadmissible.

WRIT OF REVIEW, dated June 13, 1870, of a judgment for the defendant in an action brought against her in the superior court on July 25, 1869, upon two promissory notes, made by her testator, payable to the plaintiff or bearer.

At the trial in the superior court, before *Dewey*, J., it appeared that the notes were each for $250, dated September 22, 1862, and secured by mortgage, and that one of them was payable April 1, 1867, and the other April 1, 1868. The defence was payment by the defendant's testator on April 17, 1863.

" The defendant testified that, about a year after the death of the testator, who was her husband, which occurred March 28, 1868, her attention was first called to the notes by Dexter Drake, who then claimed to own them, and to have purchased them from the plaintiff before they were due, and in the lifetime of the maker. She testified that she was sued by Drake upon the notes before the commencement of the plaintiff's action. The plaintiff, upon cross-examination, asked the defendant if she did not ascertain from counsel, while the notes were in Drake's hands, that she could not defend against Drake. The defendant objected ; and the question was excluded. The plaintiff and Drake were each allowed, without objection, to testify that the defendant did say to them that she had taken counsel and had ascertained that she could not defend against Drake.

" The defendant called the register of the probate court as a witness ; and offered to show that the plaintiff filed his petition in insolvency on March 18, 1867 ; and called upon the witness to produce the schedule of assets filed by the plaintiff. The plaintiff objected ; but the judge admitted the schedule signed by the plaintiff, for the purpose of showing that the plaintiff asserted no claim upon the notes at that time.

"The plaintiff, in reply to the defendant's case, called among other witnesses William B. Caswell, and offered to prove that this witness had commenced a suit against the plaintiff in March 1866, and that the plaintiff, in the lifetime of the maker of the notes, offered, without any injunction of secrecy, to turn out the notes to the witness, in payment of the plaintiff's debt to the witness. The defendant objected, and the question was excluded. The witness was allowed to testify that he told the maker of the notes that the plaintiff offered to turn them out to the witness, and what their maker said in reply. It was not shown, nor was any offer made to show, that the witness ever saw said notes.

"On cross-examination of this witness Caswell, the defendant, after showing by the witness that the matter of the notes, whether paid or not, was much talked over in the community, and that he had taken part in various conversations as to the same, asked the witness this question: 'What was your theory as to the explanation of how these notes were in the hands of the plaintiff, if paid?' The plaintiff objected; but the question was allowed, and the witness answered as follows: 'I did not give any theory as to these notes; I supposed how a case might come up; I supposed with others.'

"The plaintiff having stated, as a witness, that he had compromised with his creditors not far from the time when he bought the notes from Drake for cash, was asked, upon cross-examination, whether at a certain time he borrowed money from the Shelburne Falls Bank with which to compromise with his creditors. The plaintiff's counsel objected. The defendant stated that he offered this evidence to show the improbability of the plaintiff's repurchasing these notes from Drake by cash as the plaintiff had stated. The judge said that 'he would allow the defendant to prove that the plaintiff borrowed money about that time;' and admitted the question to be put for that purpose; and the plaintiff answered that he did.

"In reply to the defendant's evidence that the notes were paid April 17, 1863, the plaintiff among other witnesses called Aristides Pratt, who testified 'that in August 1866,' he 'heard a conversation between the maker of the notes and Persis T. Allen, an

insurance agent, in front of the plaintiff's hotel, in which said maker said that he had already twice told the said Allen that he should not get his life insured until he had got Woodward paid up, at the same time pointing to the hotel, which the plaintiff had owned and kept, known as the Franklin House.' To control this evidence and contradict the witness, the defendant offered, against the plaintiff's objection, to put in the record of the deed, showing that the plaintiff had sold his hotel March 18, 1866. The judge admitted evidence of the date of the deed as bearing upon the question of time, but for no other purpose.

" In the opening to the jury the defendant's counsel stated that he relied, for proof of payment, upon a variety of circumstances, and among others upon the fact that the maker of the notes never called upon the assignees of the plaintiff to pay these notes, or ever spoke to them about the notes, although one of them became due April 1, 1867, after the appointment of the assignees.

" It was admitted or proved that the notes in suit were two of five given in payment of the purchase money for a farm sold by the plaintiff to the defendant's testator, payable in one, two, three, four and five years from April 1, 1863 ; and that in April 1863, or at farthest during the year commencing April 1, 1863, the testator paid to the plaintiff all of the other notes, together with a demand note for $1000, and some $400 or $500 besides, and a mortgage of $800, then on the place, at the time of the purchase due to other parties ; and that during the autumn of 1862 he frequently expressed the desire to pay up all of the notes to the plaintiff as soon as possible. There was no evidence that the plaintiff, or any party holding the notes, said anything to their maker, or that he said anything to the holders of the notes, from April 1863 to the time of his death, about the notes or interest. The defendant testified she did not know that any such notes were in existence until about one year after the death of the testator. Samuel D. Bardwell, one of the assignees of the plaintiff, under the insolvency proceedings, was shown to have acted as his agent in compromising with his creditors, doing all of that business for him, the plaintiff not even knowing how much he paid his creditors on the dollar, nor how much to them all.

" From these facts and others, the defendant's counsel argued that the testator must have understood that the notes were paid. In the closing argument, the counsel was proceeding to argue that nothing was ever said to the assignees by the testator, although he lived a year after their appointment. The plaintiff objected to the defendant's counsel being allowed to proceed with this line of argument, because there had been no evidence introduced whether the testator had or had not spoken to the assignees about paying up these notes, and no evidence had been offered by either plaintiff or defendant as to this point. One of the assignees, Humphrey Stevens, had been called to identify certain deeds, but was not further examined. It appeared, in the course of the trial, that the assignees had been enjoined by order of the supreme judicial court from proceeding under their appointment, early after their appointment, pending the case of *Day* v. *Bardwell*, 97 Mass. 246. The judge declined to interrupt the defendant's counsel, and against the plaintiff's objection he was allowed to proceed with this argument."

The jury returned a verdict for the defendant, and the plaintiff alleged exceptions.

*S. O. Lamb & G. W. Bartlett*, for the plaintiff.

*S. T. Field*, for the defendant.

CHAPMAN, C. J. 1. The notes in suit had been given to the plaintiff by the defendant's testator, who was also her husband. After the testator's death, the defendant had been sued upon them by Drake, and the first exception is to the refusal of the court to permit the plaintiff's counsel, on cross-examination, to ask the defendant if she did not ascertain from counsel, while the notes were in Drake's hands, that she could not defend against Drake. If counsel had told her this, we cannot see how the fact is material to this action, or would affect her defence against Woodward ; and we think the refusal was right.

2. The next exception is to the admission of evidence offered by the defendant, that the plaintiff filed his petition in insolvency March 18, 1867, and filed a schedule of assets which did not include these notes. We think it was rightly admitted, for it was evidence having some tendency to show that the plaintiff did not

then have or pretend to have such a claim. If he had them, they ought to have appeared on the schedule.

3. The offer of the plaintiff to prove that he, in the testator's lifetime, offered without any injunction of secrecy to turn out the notes in payment of a debt, and that the testator was told of the fact, was not evidence against the defendant, for the plaintiff could not thus prove his own acts and words; and it was properly excluded.

4. The question put to Caswell in cross-examination, what his theory was at a certain time as to how the notes were in the hands of the plaintiff, brought out nothing in evidence of any materiality, and the point is immaterial. Nor does it appear that the judge might not allow the question to be put on cross-examination, in the exercise of his discretion.

5. The cross-examination of the plaintiff as to his borrowing money at the bank about the time that he said he purchased the notes of Drake, and while he was compromising with his creditors, was admissible; as it had some tendency to show that he had not the means with which to pay for the notes. *Atwood* v. *Scott*, 99 Mass. 177.

6. The date of the plaintiff's deed, by which he sold his hotel March 18, 1866, was offered to contradict Pratt's testimony as to the time of a conversation, and had some tendency, perhaps very slight, to prove that the conversation could not have taken place as he stated it. It does not appear to have been material, and had no tendency to prejudice the plaintiff.

7. The defendant's counsel was properly permitted to proceed with his argument to the jury, respecting the fact that the testator had never spoken to the assignees in insolvency about the notes; for, though one of the assignees had been upon the stand, there was an absence of evidence on that point which might fairly be presented to the jury.

All the exceptions taken at the trial must therefore be

*Overruled.*

After the verdict of the jury, the plaintiff duly moved in the superior court for a new trial, on the ground that, before the last

trial, one of the jurymen, Solomon Brown, had formed and expressed an opinion on the merits of this case.

" On the hearing of this motion, it was testified by three persons that the juryman Brown after one previous trial had expressed to each of them, at three several times, that he believed that these notes had been paid ; and one witness testified that Brown said he thought ' Woodward was on the catch.' It appeared that the case had been a subject of frequent discussion in the town where Brown and the plaintiff lived, there having been several previous trials.

" Before the case was opened to the jury, the presiding judge, at the plaintiff's request, asked the jury whether either of them had formed and expressed an opinion in this case, or was conscious of any bias, and, if so, to make it known.  Brown was examined on the motion for a new trial, and admitted that he heard the question so addressed to him by the judge, but that he had then no recollection of having expressed any opinion, nor was conscious of any bias.  He also admitted that, before being summoned as a juror at this term, he had expressed an opinion, after hearing some statements as to the evidence at a former trial, that he thought the notes had been paid ; but that he then had no personal knowledge of the facts, and that he had not of late expressed any opinion.

" The judge, against the plaintiff's objection, allowed others of the jury to be examined ; and they testified that Brown did not take part in the discussions, and did not attempt to influence them.  Brown was also allowed to state, against the plaintiff's objection, that he voted in favor of the plaintiff, and did not vote against the plaintiff till after all the other jurors had.  The judge overruled the motion for a new trial."

The plaintiff alleged exceptions to the rulings and decision upon this motion, which were certified by the judge to be truly stated as above, and were allowed, so far as such rulings and decision were proper matters of exception.

These exceptions were argued at this term, and afterwards reargued in writing by the same counsel ; and the opinion of the whole court thereon was drawn up by

GRAY, J.   The questions presented by the exceptions to the admission of the testimony of the jurors, upon the motion for a new trial in this case, have been fully and ably argued in writing by counsel, and, on account of their practical importance in the administration of justice, and the want of entire harmony in the adjudged cases, have been considered by all the judges, including those who were not present at the term, and after advisement and examination of the authorities, the opinion of the court is unanimous.

A motion for a new trial is addressed to the discretion of the presiding judge; and his decision is conclusive upon the question whether one of the jurors had in fact formed or expressed such an opinion as should disqualify him to try the case, or upon the question whether the party moving for a new trial had seasonably availed himself of the objection, or any other question of fact arising upon the hearing of the motion.   But the judge is not at liberty to disregard the rules of law by which the rights of the parties are governed; and upon a motion for a new trial or petition for a review, as well as at any previous stage of the case, questions of law, arising for the first time, relating to the competency of evidence or the merits of the controversy, and the rulings upon which may have affected the final decision, may be revised by this court upon exceptions.   Gen. Sts. *c*. 115, § 7.   *Norton* v. *Wilbur*, 5 Gray, 7.   *Shea* v. *Lawrence*, 1 Allen, 167.   *Kidney* v. *Richards*, 10 Allen, 419.   *Richardson* v. *Lloyd*, 99 Mass. 475.

The proper evidence of the decision of the jury is the verdict returned by them upon oath and affirmed in open court; it is essential to the freedom and independence of their deliberations that their discussions in the jury room should be kept secret and inviolable; and to admit the testimony of jurors to what took place there would create distrust, embarrassment and uncertainty. Questions of the competency of such evidence have usually arisen upon its being offered with a view to overturn the verdict; for the party in whose favor the verdict has been rendered has ordinarily no need of further proof; but the decisive reasons for excluding the testimony of the jurors to the motives and influences

which affected their deliberations are equally strong, whether the evidence is offered to impeach or to support the verdict.

In England, the earlier authorities are not uniform; but we have not found any case since the beginning of this century in which, after the return and affirmance of a verdict in open court, the testimony of jurors to the motives and influences by which their deliberations were governed has been admitted. In *Owen* v. *Warburton*, 1 N. R. 326, upon a motion in the common pleas for a new trial, the affidavit of a juror was offered to prove that the verdict was decided by lot; and Sir James Mansfield, C. J., after advisement and conference with the judges of the other courts, said that they were all of opinion that, " considering the arts which might be used if a contrary rule were to prevail," " the affidavit of a juryman cannot be received." In *Straker* v. *Graham*, 7 Dowl. 223, 225; *S. C.* 8 L. J. N. S. (Exch.) 86; Baron Alderson said, " It is entirely against public policy to allow a juryman to make affidavit of anything that passes in agreeing to a verdict." And this statement was quoted with approval by Chief Justice Tindal in *Burgess* v. *Langley*, as reported in 1 D. & L. 21, 23. In *Roberts* v. *Hughes*, 7 M. & W. 399; *S. C.* 1 Dowl. N. S. 82; upon an offer, made in opposing a motion for a new trial, of a juror's affidavit to what had passed on the delivery of the verdict in open court, it was treated as a well settled rule " to exclude jurymen from swearing to what took place in their private room, or the grounds upon which they found their verdict." In *Raphael* v. *Bank of England*, 17 C. B. 161, 174, where the affidavits of jurymen were offered in support of a motion for a new trial, Mr. Justice Willes said, " If the affidavits are to be taken as a statement of something that passed in the jury room, they clearly are not admissible." In *Standewick* v. *Hopkins*, 14 L. J. (Q. B.) 16, Mr. Justice Patteson said, " The affidavits of jurymen cannot generally be read to support their verdict; " or, according to another report of the same case in 2 D. & L. 502, " The general rule is that the affidavits of jurors are not admissible either to support or to impugn their verdict."

In the earliest reported case in this Commonwealth, *Grinnell* v. *Phillips*, 1 Mass. 530, affidavits of jurors as to the manner in

which they arrived at a verdict were indeed admitted, by the opinion of two judges against one, in support of a motion for a new trial. But that case has been overruled by a series of later decisions.

In *Whitney* v. *Whitman*, 5 Mass. 405, when the jury retired to consider their verdict, a material paper, favorable to the party that prevailed, and which had not been put in evidence at the trial, was delivered with the other papers to the jury by mistake, and without fault of either party. Upon a motion for a new trial for this cause, each party summoned some of the jurors to prove whether they were influenced by the paper in finding their verdict. But, as the report states, " the court refused to examine any of the jurors; and observed that the court must be governed by the tendency of the paper apparent from the face of it; that it was not pretended that the jury had not read it, and it would be difficult for jurors, where, as in this case, there was much evidence of different kinds, clearly to decide in what manner their minds were influenced in forming their verdict. As it was received by the jury among other written evidence, and read by them, it must be presumed that they considered it as evidence, and gave due weight to it. The verdict was therefore set aside, and a new trial granted." So in *Hix* v. *Drury*, 5 Pick. 296, 302, the court observed: " Where a paper, which is capable of influencing the jury on the side of the prevailing party, goes to the jury by accident, and is read by them, the verdict will be set aside, although the jury say that they were not influenced by such paper, for it is impossible for them to say what effect it may have had on their minds."

In *Bridge* v. *Eggleston*, 14 Mass. 245, 248, " the court said that it had been expressly ruled, at a capital trial in Suffolk, that jurors should not be received to testify to the motives or inducements upon which they had joined in a verdict."

In *Hannum* v. *Belchertown*, 19 Pick. 311, which was an action against a town, under the St. of 1786, *c.* 81, § 7, to recover double damages for a defect in a highway, the defendants moved for a new trial upon the ground that the jury had doubled the damages, instead of leaving them to be doubled by the court and in

proof of this offered the affidavits of the jurors. But the court, in the judgment delivered by Mr. Justice Morton, said : "We have received and have examined the depositions of all the jurors, and have come to the conclusion that they are inadmissible, but if admitted would show no sufficient cause for a new trial. The only point in which they all agree is, that they did not render a verdict for double damages. Nothing could better illustrate the wisdom of the rule, which holds the deliberations of the jury room to be inviolable, and precludes jurors from giving evidence of their own misconduct, of the reasons and grounds of their determinations, and the motives which governed their conduct. These are different in different jurors, some being influenced by one reason or motive, and others by different ones. If we required perfect unanimity in their reasoning as well as in the results, agreements would become as rare as disagreements now are. Men of strong minds and sound judgments, who are very sure to come to wise and just conclusions, would, if called upon to state the grounds of their opinions, often give very insufficient and unsatisfactory reasons for their decisions. The secrecy of the deliberations and discussions of the jury, and the exemption of jurors from the liability of being questioned as to their motives and grounds of action, are highly important to the freedom and independence of their decisions."

In *Cook* v. *Castner*, 9 Cush. 266, in which a new trial was moved for because one of the jurors had previously formed an opinion upon the case, and had stated it to the rest of the jurors in the jury room while they were deliberating upon their verdict, Chief Justice Shaw, in delivering judgment, said : "We think the judge was right in rejecting evidence of the alleged partiality and misconduct of a juror in the jury room, by the testimony of the juror himself or of the other jurors. It is a rule founded upon obvious considerations of public policy, and it is important that it should be adhered to, and not broken in upon to afford relief in supposed hard cases. A verdict, as the name imports, (*veredictum*,) is taken in theory of law to be absolute truth, and it is important that it should be so regarded. All communications among the jurors are confidential; they are in-

tended to be secret, and it is best they should remain so. It is very probable, indeed it is almost inevitable, that many things should be said and views expressed, by individual jurors, which not only have no influence on others, but which they themselves do not ultimately adhere to and act upon."

In *Bridgewater* v. *Plymouth*, 97 Mass. 382, on a motion for a new trial, the testimony of two of the jurors was held inadmissible to show that they misunderstood the instructions of the judge and were induced by misapprehension to assent to the affirmance of the verdict in court; and Mr. Justice Foster, in delivering the opinion, said : " The time for objecting to the verdict as announced is when it is received and before it is recorded in open court. To admit afterwards a conflict of affidavits would be dangerous in the extreme, and lead to interminable controversy." See also *Murdock* v. *Sumner*, 22 Pick. 156 ; *Alcott* v. *Boston Steam Flour Mill Co.* 11 Cush. 91 ; *Folsom* v. *Manchester*, Ib. 334 ; *Boston & Worcester Railroad Co.* v. *Dana*, 1 Gray, 83 ; *Chadbourn* v. *Franklin*, 5 Gray, 312.

The jury may indeed, upon the return of the verdict, be inquired of by the court in its discretion, as to which of several grounds taken by the parties at the trial they based their verdict upon, or the rule by which they assessed damages. But in answering such inquiries, as was said by Mr. Justice Morton, " they act as jurors, and not as witnesses — under their official oath, not under an oath to testify." *Dorr* v. *Fenno*, 12 Pick. 521, 525. *Spoor* v. *Spooner*, 12 Met. 281.

In *Capen* v. *Stoughton*, 16 Gray, 364, after an order accepting the verdict of a sheriff's jury in favor of one party had been improvidently made by the court through mistake of counsel, and for that reason afterwards vacated, members of the jury were permitted to testify that the jury signed this verdict by mistake, after having agreed to a verdict for the other party and filling up a blank form accordingly. But that case, as was observed by Chief Justice Bigelow in delivering judgment, went upon the ground that it involved no inquiry into the conduct of the jurors during the progress of the trial, or the mode in which their verdict was arrived at or made up, but only a clerical error, by rea-

son of which the paper which they signed did not express the result upon which they had all agreed. And that verdict had been sealed up by the jury, and returned by the sheriff into court after they had separated, and never been affirmed in their presence, as to which the affidavits of jurors might with more reason be admitted than in the case of an ordinary verdict rendered in open court and affirmed and recorded in the presence of the jury. See *Bridgewater* v. *Plymouth*, 97 Mass. 382, 391; *Milsom* v. *Hayward*, 9 Price, 134; 1 Tidd Pract. (9th ed.) 582.

The report of *Ferrill* v. *Simpson*, 8 Pick. 359, upon which the defendant much relied, is very brief and unsatisfactory. So far as it bears upon this point, it merely states that upon a petition for a review of a real action the counsel for the respondent "produced one of the jurors to testify that a misapprehension at the trial in regard to a certain line had no influence upon the verdict;" and that "the court said that, as the petition was addressed to the discretion of the court, the evidence might be admitted. The juror was accordingly examined." Neither the nature of the mistake, nor its alleged bearing upon the case, nor the testimony given, is stated in the report. The only reason assigned for its admission — "as the petition was addressed to the discretion of the court" — implies that it was deemed inadmissible on any other ground; and is wholly unsound, for the admission and rejection of evidence upon the hearing of a petition for a review must be governed by the ordinary legal rules. *Richardson* v. *Lloyd*, 99 Mass. 475.

In *Tucker* v. *South Kingstown*, 5 R. I. 558, affidavits of jurymen as to what took place in the jury room and the grounds upon which they found their verdict were offered to impeach the verdict, and rejected; and no opinion was required by the case, or expressed by the court, as to the admissibility of such affidavits in support of the verdict.

In *United States* v. *Reid*, 12 How. 361, the affidavits of two jurors, offered in support of a motion for a new trial, stated that during the trial they read a report of the evidence in a newspaper, but that it did not influence their verdict. Chief Justice Taney, in delivering judgment, abstained from laying down any

general rule as to the reception of the affidavits of jurors. or examining the decisions upon the subject, because the court were of opinion "that the facts proved by the jurors, if proved by unquestioned testimony, would be no ground for a new trial. There was nothing in the newspapers calculated to influence their decision, and both of them swore that those papers had not the slightest influence upon their verdict." The court did not decide, but expressly declined deciding, whether the affidavits were or were not admissible. If they were rejected, the verdict of course stood. If the facts stated in them should be assumed as proved, there was nothing in them to impeach the verdict; and this, not merely because the jurors were not influenced, but also because there was nothing in the papers calculated to influence them.

It has long been settled law that the delivery of any paper by a party or his agent, designedly, and without the authority of the court, to the jury after they have retired to deliberate upon the case, will avoid a verdict in his favor, although the jury swear that they did not read it. Co. Lit. 227 *b.* *Heylor* v. *Hall*, Palm. 325; *S. C.* 2 Rol. R. 261. *Webb* v. *Taylor*, 2 Rol. Ab. 714, pl. 6; *S. C.* Style, 383; Trials per Pais, 224. *Richmond* v. *Wise*, 1 Ventr. 124, 125. And in *Hix* v. *Drury*, 5 Pick. 296, 302, this court accordingly said: "We are all of opinion that if a paper not in evidence is delivered to the jury by design, by the party in whose favor the verdict is returned, the verdict shall be set aside, even if the paper is immaterial; and this as a proper punishment for the party's misconduct."

But where evidence has been introduced tending to show that, without authority of law, but without any fault of either party or his agent, a paper was communicated to the jury, which might have influenced their minds, the testimony of the jurors is admissible to disprove that the paper was communicated to them, though not to show whether it did or did not influence their deliberations and decision. A juryman may testify to any facts bearing upon the question of the existence of the disturbing influence, but he cannot be permitted to testify how far that influence operated upon his mind.

For example, in *Hix* v. *Drury*, just cited, where material papers, which had not been given in evidence at the trial, were delivered to the jury by accident, it was held that the affidavits of the jurors were admissible to prove that the papers were not read by the jury, because, as was said by the court, " where a paper which might influence the jury is not read, it is the same thing as if it had not been delivered to them." But, as has been stated in the earlier part of this opinion, it was also said in that case, and had been previously decided in *Whitney* v. *Whitman,* 5 Mass. 405, that, if the jury received and read the paper, they could not be permitted to testify upon the point whether it did or did not actually influence them. The same rule was laid down and acted on in the earlier cases in New Hampshire. *Page* v. *Wheeler,* 5 N. H. 91, 93. *State* v. *Hascall,* 6 N. H. 352, 361. In *State* v. *Hascall,* it was further held that the jurors could not be allowed to testify that " they were induced to agree to the verdict from a consideration of the law and evidence given at the trial, and from that only."

Upon the same principle, where the cause which is alleged to have prevented a fair trial is misconduct or partiality on the part of a juror, and testimony of his acts or declarations outside of the jury room has been introduced for that purpose, his testimony in direct denial or explanation of those facts is admissible. The statement of Mr. Justice Morton in *Dorr* v. *Fenno,* 12 Pick. 521, 525, that the testimony of jurors " may be received to explain or contradict other evidence tending to impeach their conduct," directly affirms this ; but cannot, consistently with the judgments delivered by himself and other judges of this court in the cases already cited, be extended to allow the same or other jurors to testify to the part which they took, or the motives which influenced them, in their private deliberations.

In *McCorkle* v. *Binns,* 5 Binn. 340, where, upon a motion for a new trial after a verdict for the plaintiff in an action of libel, a witness testified to declarations, made by a juror before the trial, that he had made up his mind against the defendant and would find a verdict against him, the court permitted that juror to testify that he never made any such declarations ; but would

not allow him to be asked "whether he had not been for the lowest damages of any of the jury;" the chief justice saying that "he thought it unnecessary in this case," and the other judges "that it was wrong, on principle, to inquire into the proceedings of the jury, by questions to the jurors themselves."

In *Ramadge* v. *Ryan*, 2 Moore & Scott, 421; *S. C.* 9 Bing. 3?3; upon a motion for a new trial, affidavits were produced that one of the jurors, on the day before the trial, had expressed his surprise at a verdict in a similar case, and said, "I shall be on the jury tomorrow, and I will take care that the verdict does not go that way." The court thereupon granted a rule to show cause, Chief Justice Tindal saying that the juror would "then have an opportunity of answering the matters with which he is now charged." The juror made an affidavit, denying the words alleged to have been used by him, which the court received, and on the strength of it refused a new trial. At the hearing upon the rule, the foreman of the jury also made an affidavit, stating that neither he nor any of the other jurors was influenced by anything which that juror said or did at the trial; but the court refused to receive it, and observed that those in support of the application referred only to the conduct of the juror before he entered the jury box.

In *Addison* v. *Williamson*, 5 Jur. 466, Baron Alderson permitted an affidavit of a juror, offered in support of the verdict, to be read so far as it contradicted his having made declarations attributed to him by affidavits of other persons, but excluded so much of it as stated other circumstances relating to the trial.

In *Standewick* v. *Hopkins*, 14 L. J. (Q. B.) 16; *S. C.* 2 D. & L. 502; *S. C. nom. Standerwicke* v. *Watkins*, 9 Jur. 161; where affidavits were filed imputing misconduct and gross partiality to several of the jurors; to meet which were offered their affidavits partly explaining and partly denying the charges; Mr. Justice Patteson said: "The affidavits of jurymen cannot generally be read to support their verdict; but here they are proposed to be used to answer affidavits casting imputations upon them; and when misconduct like this is charged against them, it would be contrary to natural justice not to allow them to make an answer.'

The contents of the affidavits on either side are not particularly stated in any of the reports. But that they did not relate to the deliberations in the jury room is manifest from the note of the first reporter, that " this is not inconsistent with the ruling of Rolle, C. J., in *Taylor* v. *Webb*, Trials per Pais, 224, that the affidavit of the jury ought not to be allowed to make good their verdict."

In *Haskell* v. *Becket*, 3 Greenl. 92, upon a petition for a review, the petitioner introduced evidence that one of the jurors had said before the trial that he had better settle the action, for he thought he would lose it. The juror, being called by the respondent, testified in direct explanation of these statements, and that he had not formed any opinion of his own upon the merits of the cause, and came to the trial without any bias or prejudice. " He also testified, as did another juror, that on going into their room the jury very soon agreed on a verdict for the defendant, and that he was one of the last to give his opinion." This last testimony does not appear to have been objected to, and is not noticed in the opinion of the court, who, in relation to the position of the petitioner that the juror had formed and expressed an opinion unfavorable to his cause, said : " But this is explained in a satisfactory manner by the juror himself, who is very properly called for that purpose. Indeed, whenever the verdict is impeached for any cause of this sort, the juror implicated ought to be permitted to explain." The subsequent decisions in *Taylor* v. *Greely*, 3 Greenl. 204, and *Sawyer* v. *Hopkins*, 22 Maine, 268, are to the same point exactly. Those of *Newell* v. *Ayer*, 32 Maine, 334 ; *Thrall* v. *Lincoln*, 28 Verm. 356 ; *Downer* v. *Baxter*, 30 Verm. 467 ; and *Bradford* v. *State*, 15 Ind. 347 ; go no farther.

In *Heffron* v. *Gallupe*, 55 Maine, 563, the court held that the testimony of a juror was admissible to facts touching his own conduct or acts when separated from his fellows, or the acts or declarations of other persons with or to him, but was inadmissible to what transpired in the deliberations of the jury, acting as an organized body, presided over by their foreman and performing their official duty.

In *Tenney* v. *Evans*, 13 N. H. 462, and several later cases in New Hampshire, the court has indeed gone so far as to admit, in order to disprove that a juror had formed an opinion, or was subject to bias or prejudice, the affidavits of the juror himself and his associates as to the part which he took in the discussions in the jury room; but has not assigned any satisfactory reasons for so doing. *State* v. *Howard*, 17 N. H. 171. *State* v. *Pike*, 20 N. H. 344. *State* v. *Ayer*, 3 Foster, 301. *Boynton* v. *Turnbull*, 45 N. H. 408. And in *Folsom* v. *Brawn*, 5 Foster, 114, the same court, in rejecting affidavits of jurors that they were under a misapprehension as to the effect of the verdict upon the costs, and would not have agreed to the verdict had they known the law on the subject, said: " Affidavits of jurors are not admissible to show their impressions as to the effect of their finding, or that they intended something different from what they found by their verdict.    To allow affidavits of jurors for such purposes, or to show the consultations that took place in the jury room, and the motives, inducements or principles upon which the jury founded or joined in a verdict, would lead to great mischief. And this view of the matter is well sustained by authority."

The only other decision cited in the learned argument for the defendant, in support of the admission of the testimony of jurors to what took place during their deliberations in the jury room, is the *per curiam* opinion in *Dana* v. *Tucker*, 4 Johns. 487, by which, after an affidavit of the constable attending the jury had been introduced, stating that the jurors agreed that each of them should mark down such sum as he thought fit to find, and, the sum total being divided by twelve, the quotient should be the verdict, and that the verdict was so ascertained, the supreme court of New York rejected similar affidavits of two of the jurors, but admitted the affidavits of two other jurors that after the jury had unanimously agreed to find a verdict for the plaintiff, and each juror had privately marked the sum he was inclined to give, and the sums so marked had been added together and the amount divided by twelve, the jury agreed that the sum which had been thus produced should be their verdict.    That decision can hardly be reconciled with the later cases in this Commonwealth and in

England. But the affidavits there admitted were in direct contradiction of the testimony offered to impeach the verdict, and related to the action of the whole jury, and not to the part taken by individual jurors in their deliberations. And the decision would seem to be limited accordingly by the judgment of the same court in *Brownell* v. *McEwen*, 5 Denio, 367, excluding affidavits of particular jurors offered to show that they agreed to the verdict rendered, on the supposition and under the impression that it would settle another cause of action beside that on which the suit was brought; and declaring that to allow a juror to disclose what influence operated upon his own mind, to induce him to assent to the verdict which he joined in rendering, was not warranted by any of the cases on the subject, and could not be tolerated.

Upon a consideration of the whole matter, our conclusion is, that the testimony of the juryman Brown in explanation of the facts and statements relied on to prove that he had formed and expressed such an opinion as was attributed to him, was rightly admitted, as directly tending to meet and explain the testimony introduced by the plaintiff, and not concerning anything that passed in the jury room; but that the testimony of Brown and other jurors as to the part which he took in the discussions and votes of the jury was incompetent and should have been excluded, because it related to the private deliberations of the jury, and had no tendency to disprove that he had previously expressed and still entertained an opinion inconsistent with an impartial discharge of his duty.

As it does not appear that the new trial was denied upon the ground that, independently of this testimony, the judge was not satisfied of the existence of opinion or prejudice on the part of this juror, or upon the ground that the plaintiff had been unreasonably negligent in raising the objection to his qualifications, the exception to the admission of the incompetent evidence must be sustained, and the case stand in the superior court for a

*Rehearing of the motion for a new trial.*