COMMONWEALTH *vs.* FRANCIS L. WHITE.

Suffolk.    April 2, 1888. — May 5, 1888.

Present : MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*New Trial — Juror — Misconduct — Conversations — Law and Fact — Evidence.*

If during the trial of an indictment improper remarks are made in the hearing of jurors, before and after they are impanelled and outside of the jury-room, the presiding judge is not required, as matter of law, to set aside the verdict.

Upon the hearing of a motion for a new trial, the testimony of jurors as to conversations between them, during the trial and outside of the jury-room, is inadmissible to impeach their verdict.

INDICTMENT. After the former decision, reported 145 Mass. 392, at a hearing in the Superior Court, before *Sherman,* J., on a motion for a new trial on the ground that " some of the jurors were unduly influenced and expressed a decided opinion of the guilt and innocence of the defendant before the evidence on either side of the case was concluded, and before the arguments of counsel were made, and before the jury were charged on the law and facts of the case," evidence was offered in substance as follows.

One Ross testified that he was one of the jurors who tried the case against the defendant at the April term, 1887 ; that during the trial Daley, another juror, and himself went into a saloon on Hanover Street in Boston to get some refreshments, and talked about the trial ; that the barkeeper asked if they were talking about the White case, and, upon an affirmative answer, added, " Well, I guess the fellow is guilty fast enough "; that, two or three days before the trial began, he heard the case talked about in the court-room ; that it was said, but not to him, that the defendant had been tried before, and had secured a new trial by getting a false affidavit from a juror ; that he talked with French, another juror, about the case on the second or third day of the trial, on their way to the court-house ; that he suspected that French was favorably inclined to the defendant, and was disposed to hang the jury, regardless of the evidence ; that he told French that they had better be careful, as the jurors

were being watched, that if he did hang the jury he would report him to the court, and that he believed that the defendant was guilty; that he had several talks with French outside of the court-house and before the evidence was concluded; that he had never been on a jury before, and thought he was doing his duty; that the presiding judge cautioned the jury not to talk about the case until the evidence was closed, nor allow other persons to talk to them about the case; and that he was troubled at the part he had taken, and in accordance with the advice of a friend, a member of the bar, he made an affidavit on August 23, 1887, reciting the above facts.

Daley testified that he was a member of the jury that tried the defendant; that one day he met Ross, while the case was being tried, and after the adjournment of the court; that they went into the saloon on Hanover Street, and each had some beer and refreshments; that while they were there Ross began talking about the case to him; and that he did not hear the barkeeper make any remark about it.

French testified that he was one of the jurors who tried the defendant; that, a day or two before the trial commenced, he overheard a man saying that the defendant had tampered with the jury in a previous trial; that the remarks were not addressed to him, and he did not know who made them; that on the second day of the trial, after the jury were dismissed, and as he was passing out through the corridor of the court-house, he heard some one say, "There will be no disagreement of the jury in this case, — the damned fool had better have skipped to Canada, and not stay here thinking he could get out of it, — he can't doctor the jury as he did the jury" in the previous trial; that he did not know who made these remarks; that during the trial both the foreman of the jury and Ross said that the defendant was guilty; that during the trial Ross charged him with being a kicker and favorable to the defendant, and threatened to report him to the court and the officers if he voted for acquittal; and that during the trial the foreman said that the defendant was a damned rascal and should be convicted.

The judge ruled that the testimony of jurors as to conversations between them during the trial, whether in the court-room or out of court, was inadmissible to impeach their verdict, and excluded

their evidence on that subject; and that, as matter of law, the defendant was not entitled to a new trial, and in the exercise of his discretion declined to grant it; and, at the request of the defendant, reported the case for the determination of this court.

*E. Avery*, (*G. M. Hobbs* with him,) for the defendant.

*A. J. Waterman*, Attorney General, & *H. C. Bliss*, Assistant Attorney General, for the Commonwealth.

DEVENS, J. A motion for a new trial, on grounds similar to those alleged in the case at bar, is ordinarily addressed solely to the discretion of the judge who presided at the trial. Unless he shall have refused to exercise that discretion in favor of the moving party under circumstances the proved existence of which required that for some legal reason he should do so, or unless he has refused to receive and consider evidence by which that discretion should be guided or controlled, his decision cannot be elsewhere reviewed. *Woodward* v. *Leavitt*, 107 Mass. 453, 458. *Clapp* v. *Clapp*, 137 Mass. 183. *Johnson* v. *Witt*, 138 Mass. 79. *Commonwealth* v. *Desmond*, 141 Mass. 200.

In the case at bar, the defendant offered testimony as to statements made in the hearing of some of the jurors before they were impanelled, of other statements made in their hearing after they were impanelled, and of a conversation between one or more of them and a third person pending the trial. This testimony was received by the presiding judge. The defendant further offered the testimony of a juror to expressions of opinion by a certain juror to another, during the trial, and of urgency by him and the foreman, by threats, to control and improperly influence the judgment of their fellow juror. These expressions were uttered elsewhere than in the jury-room, although after the jury was impanelled, and while the trial was pending. The presiding judge ruled that the testimony of jurors as to conversations between them during the trial, whether within or without the court-room, was inadmissible to impeach their verdict, and excluded their evidence on this subject. He further held that the defendant was not, as matter of law, entitled to a new trial, and in the exercise of his discretion declined to grant it.

In regard to what was alleged to have been said in the presence of the jurors before and after they were impanelled,

the evidence was conflicting, and the evidence of one of the jurors, who testified to them, was by no means free from suspicion. His professions of a desire to do his duty are not quite consistent with his delay in making known the attempted influence to which he had himself been subjected, or that which he had sought to impose upon others. It may well have been that the presiding judge was not satisfied, upon the facts, that the occurrences testified to had taken place. In such case it would certainly have been his duty to reject the motion. But assuming, in favor of the defendant's contention, that he must have been, and was, satisfied that improper remarks had been made to the jury, there was no legal reason which rendered it his duty to grant a new trial.

Remarks made in the presence or hearing of jurors as to cases on trial cannot always be prevented. Jurors are presumed to be, and are, with those exceptions that must always exist, men of intelligence, of good moral character, and fully competent and desirous to do their duty in the matters submitted to them. It is not to be presumed that they will be affected by casual observations made in their presence, or even to them. It is for the judge in each instance to determine whether what has taken place is of this incidental character, or whether conversations or solicitations have been addressed to them of such a nature that their effect must fairly be held to have been to deprive the injured party of a fair and impartial trial. Where a party to a suit has been guilty of countenancing or promoting an interference with the jury, a stricter rule would be adopted as against him than where this interference was the act of another, even of one of his own witnesses, acting without any countenance from him, and also where the interference was the act of an officer of the court. *Woodward* v. *Leavitt*, 107 Mass. 453, 458. *Johnson* v. *Witt*, 138 Mass. 79.

It cannot be said that it was proved, upon the evidence, that there was here a studied attempt, as the defendant urges, to poison the minds of the jurors, or to deprive him of a fair trial, and that the judge was bound thus to find. The piece of testimony, that, while two of the jurors were talking together in a saloon, the barkeeper, hearing them, remarked, " Well, I guess the fellow is guilty fast enough," is much relied on as showing

that the defendant should have a new trial.  This remark was heard by one juror, but not by the other.  Assuming it to have been made, the presiding judge might well have considered such a remark as of very slight importance in its influence on the mind of the juror.

We are also of opinion, that the presiding judge properly excluded evidence of the conversations between the jurors, and of alleged improper urgency upon one of them by another, and also by the foreman, which took place outside of the jury-room. The reasons have been repeatedly stated which justify the exclusion of evidence as to what has taken place in the jury-room, in order to show thereby insufficient reasons, partiality, or misconduct in rendering the verdict.  *Cook* v. *Castner*, 9 Cush. 266, 278.  They were carefully restated, and the cases on the subject of the impeachment of verdicts carefully collated, in *Woodward* v. *Leavitt,* ubi supra.  They apply with equal force where the conversations between the jurors take place when they, or a part of them, are together on the way to or from the court-house.  While jurors are often properly advised against conversations in regard to the evidence in cases before them until they have heard the whole of it and return for their final deliberation, there is no rule of law which forbids them.  The same considerations of public policy as those which induce a court not to entertain a motion to set aside a verdict on the ground of error, mistake, irregularity, or misconduct of the jury, or any of them, on the testimony of one or more jurors, will, as Chief Justice Morton observes in *Rowe* v. *Canney*, 139 Mass. 41, "protect the communications of jurors with each other, whether in or out of the jury-room, during the pendency of the case on hearing before them."                    *Motion refused.*