LEONARD HARRINGTON *vs.* WORCESTER, LEICESTER, AND
SPENCER STREET RAILWAY COMPANY.

CALISTA E. HARRINGTON *vs.* SAME.

Worcester.    October 5, 1892. — January 5, 1893.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Misconduct of Juror — Evidence — New Trial — Discretion of Court.*

At the hearing of a motion for a new trial of an action which resulted in a verdict
for the defendant, for personal injuries occasioned by a collision of the plaintiff's
team with the defendant's car, on the ground that one of the jurors before whom
the case was tried, after the arguments had been made and before the charge
of the judge had been given, went alone to view the premises where the accident
happened, and made inquiries of persons there concerning the accident, the
juror was asked by the defendant, "Did you see or hear anything at the time
you viewed the premises alone that influenced your mind one way or the
other in relation to this case, or anything that influenced your mind against the
plaintiffs or their causes in any degree ? "  *Held,* that the question was properly
excluded.

At the hearing of a motion for a new trial of an action for personal injuries occa-
sioned by a collision of the plaintiff's team with the defendant's car, on the
ground of misconduct of one of the jurors before whom the case was tried, it
appeared that, after the arguments had been made and before the charge of the
judge had been given, the juror went alone to view the premises where the ac-
cident happened, and made inquiries of persons there concerning the accident,
and also asked one who had been a witness in the case where he stood at the
time of the accident, and the place was pointed out to him. The jury had taken
a view of the premises previously by direction of the court.  *Held,* that the
judge, in the exercise of his discretion, properly granted a new trial.

TWO ACTIONS OF TORT, for injuries occasioned to the plain-
tiffs in person and property, on September 9, 1891, by reason of
the vehicle of the plaintiff in the first case coming into collision
with a car owned by the defendant, which was then being driven
by electricity along Canterbury Street in Worcester.

The cases were tried together in the Superior Court, before
*Maynard,* J., and the jury were taken to the scene of the acci-
dent to view the premises.  After the jury had rendered a ver-
dict for the defendant in each action, it came to the knowledge
of the plaintiffs' counsel that Curtis B. Green, one of the jurors
before whom the cases had been tried, after the arguments had
been made and before the charge of the presiding judge had

been given, went alone to view the premises where the accident happened, and made some inquiries of persons he found there concerning the accident; and thereupon the plaintiffs filed motions for a new trial on account of the juror's conduct, alleging that his acts amounted to such misconduct as required the verdicts to be set aside.

At the hearing upon the motions, the affidavit of John Roach was put in evidence, and the juror, Curtis B. Green, testified that the arguments in the cases were finished Wednesday afternoon, and that Thursday morning, before the coming in of the court, when the charge of the presiding judge was to be given to the jury, he visited alone the scene of the accident and there looked the premises over, and went into a store near where the accident happened and asked the proprietor if he saw the accident; that the proprietor informed him that he did not see the accident, as he was away at the time it occurred; that Green then asked him if the electric cars did not run faster about the time they began running the previous fall than they did then, which question the proprietor answered in the affirmative, adding that the cars the preceding fall ran at a rate of eighteen or twenty miles an hour; that Green then passed out of the store, and seeing Roach, who had testified for the plaintiffs at the trial, said to him, "Just where did you stand at the time of the accident?" and that Roach pointed out the place, but there was no further conversation between them, and this was all that he said or did at the time he viewed the premises alone.

While Green was testifying, he was asked the following question by the defendant's counsel: "Did you see or hear anything at the time you viewed the premises alone that influenced your mind one way or the other in relation to this case, or anything that influenced your mind against the plaintiffs or their causes in any degree?" This question, upon the objection of the plaintiffs, was excluded; and the defendant excepted.

Upon the trial, the plaintiffs contended that the cars, at the time of the accident, ran much faster than they did later, which was contradicted by the defendant. The foregoing was all the evidence upon the motions for a new trial.

At the conclusion of the evidence on the motions, the defendant asked the judge to rule as follows: "1. On the evidence, as

matter of law, the plaintiffs' motions ought not to be granted. 2. There is no evidence to authorize a finding that the mind of the juror was influenced against the plaintiffs. 3. If the court finds that the juror saw nothing but what he had seen on the view, there would be no legal reason on that account alone to set aside the verdict. 4. The court would not, as matter of law, be authorized to set aside the verdict, unless he finds that the juror was influenced unfavorably to the plaintiffs by what he saw or heard. 5. If all the information obtained by the juror was in favor of the contention of the plaintiffs during the trial, the court would not be authorized, as matter of law, to set aside the verdict." The judge refused to give the rulings requested; and the defendant excepted.

The judge granted the motions, and ordered the verdicts to be set aside, as a matter of discretion. The defendant alleged exceptions.

*B. W. Potter & F. A. Gaskill*, for the defendant.

*F. P. Goulding*, for the plaintiffs.

LATHROP, J.   A motion for a new trial is addressed to the discretion of the justice presiding at the trial; and his decision is final upon all questions of fact. But questions of law which arise for the first time at the hearing upon the motion, relating to the competency of the evidence or the rulings of the justice, may be revised by this court.   *Woodward* v. *Leavitt*, 107 Mass. 453, 460.   Pub. Sts. c. 153, § 8.

The question to the juror was properly excluded. The rule was thus stated in *Woodward* v. *Leavitt* (p. 466), by Mr. Justice Gray: " A juryman may testify to any facts bearing upon the question of the existence of the disturbing influence, but he cannot be permitted to testify how far that influence operated upon his mind."   See also *Johnson* v. *Witt*, 138 Mass. 79.   In *Chemical Electric Light & Power Co.* v. *Howard*, 150 Mass. 495, it appeared that after the jury had agreed upon a verdict, and while it was on the way to the court-room in charge of an officer, one of the jurors separated from his fellows and went home. On a motion for a new trial, the report states that " the juror in question testified that he separated from the jury supposing that the court had adjourned, and that during his absence no one spoke to him, nor he to any one, in regard to the case, and that

he was in no way influenced in regard to it." This might be interpreted as meaning that the juror was permitted to testify as to the state of his mind, and not merely as to the non-existence of any disturbing influence. The language of the original bill of exceptions is, that the juror " testified that he left supposing that the court had adjourned; that no one spoke to him, nor he to any one, in regard to the case during his absence; and that during his absence was in no way influenced in regard to the same." Fairly interpreted, we think that the juror was not testifying to his state of mind. At any rate, no such question was presented to this court, as no exception was taken to the evidence of the juror. The language of the court on this point is, " The testimony of the juror was competent to show that nothing happened to affect or influence him while he was separated from his fellows " (p. 498); and *Woodward* v. *Leavitt* and *Johnson* v. *Witt* are cited. We do not therefore regard this case as changing the rule stated by Mr. Justice Gray in *Woodward* v. *Leavitt*.

The first request for a ruling was properly refused. If there is an improper meddling with the jury by a party in whose favor a verdict is rendered, or by an officer of the court, this of itself is ground for a new trial, without inquiring as to the effect of the intermeddling, if it is of such a character as to have any tendency to affect the verdict. *Woodward* v. *Leavitt, ubi supra*, and cases cited. *Read* v. *Cambridge*, 124 Mass. 567. *Johnson* v. *Witt, ubi supra*, per Morton, C. J. Where there is an intermeddling with the jury by a stranger to the suit, the question whether a new trial should be granted is largely within the discretion of the justice presiding at the trial. *Johnson* v. *Witt, ubi supra*.

The question before us in this case is as to the misconduct of one of the jury. It is undoubtedly within the power of the presiding judge in such a case to refuse to grant a new trial, if he is satisfied that the interests of justice do not require that the verdict should be set aside; as, for example, if the conduct of the juror in no way tends to prejudice the party against whom the verdict is rendered. *Chemical Electric Light & Power Co.* v. *Howard, ubi supra*. *Commonwealth* v. *McCauley*, 156 Mass. 49. It is, however, equally within the power of the presiding justice

to grant a new trial where a juror takes a private view, and thus obtains evidence other than that authorized by the court. *Bowler* v. *Washington*, 62 Maine, 302. *Winslow* v. *Morrill*, 68 Maine, 362. *Deacon* v. *Shreve*, 2 Zabr. 176. *Stampofski* v. *Steffens*, 79 Ill. 303. *Ortman* v. *Union Pacific Railway*, 32 Kans. 419.

In *United States* v. *Salentine*, 8 Biss. 404, cited by the defendant, the general rule was recognized, but the court refused to apply it, on the ground that the party applying for the new trial had participated in the misconduct of the juror.

The grounds upon which this court, in *Commonwealth* v. *Desmond*, 141 Mass. 200, sustained the exercise of the discretion of the court below in refusing to grant a new trial where a juror took a private view, was that the act was after the deliberation of the jury was ended, and the verdict agreed upon and sealed; and that the act of the juror was " to gratify curiosity in regard to a matter about which he had acted, and not to get information in regard to a matter upon which he was to act."

The second request was properly refused. The question of fact was not whether the mind of the juror was influenced, but whether his act might have influenced his mind, or was of such a nature as to have any tendency to influence it. *Hix* v. *Drury*, 5 Pick. 296. *Johnson* v. *Witt*, 138 Mass. 79. *Commonwealth* v. *Desmond*, 141 Mass. 200.

In the case at bar, the juror not only took a view, but asked one who had been a witness in the case where he stood at the time of the accident, and the place was pointed out to him. The knowledge thus acquired may have had a strong tendency to influence the juror's mind in agreeing to the verdict rendered.

The third request was properly refused. Nothing appears in the bill of exceptions to show what the juror saw at the time of the view authorized by the court. Nor is a court called upon, where such an act of misconduct occurs, to enter minutely into details, and to determine exactly what was seen on the authorized view and what on the unauthorized visit. It is enough if the court is satisfied that the act of misconduct might have influenced the mind of the juror.

The questions arising on the other requests are covered by what we have already said.    *Exceptions overruled.*