CHARLES COLLINS *vs.* HERBERT W. SPLANE.

SAME *vs.* McKIE LIGHTER COMPANY.

Suffolk.   March 22, 25, April 8, 1918. — May 24, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Negligence*, Invited person, In raising ship.   *Agency*, Scope of employment, Ratification, Existence of relation.   *Practice, Civil*, New trial.   *Jury and Jurors.*

In an action by the owner of a motor boat against a lighter company for personal injuries caused by the giving way of apparatus of the defendant, which was being used to raise the stern of a tug owned by a third party while the plaintiff was beneath the stern with his boat carrying the tug's engineer in order that the engineer might remove a hawser which had become entangled in the propeller, it is unnecessary for the plaintiff, in order to show that he rightfully was there, to show more than that he undertook to assist at the request of the captain of the tug.

Upon a review of the evidence at the trial of the action above described, it was *held* that there was evidence warranting findings that employees of the defendant acted within the scope of their authority in undertaking at the request of the captain of the tug to hoist the stern of the tug for the purpose above described, and that, if their action in that regard originally was unauthorized, it afterwards was ratified by the company's officers, who, with full knowledge of the circumstances, presented and received payment of a bill for the work thus performed.

In the action above described there was evidence which warranted findings that the defendant's employees in hoisting the tug used a hook attached to the block of a tackle holding a sling which had been passed under the stern of the tug and which was so worn, chafed and frayed that, when subjected to the strain necessary for the work, it gave way and the tug's stern descended upon the plaintiff, and that this condition could have been ascertained and remedied by the exercise of reasonable diligence on the part of the defendant's employees. *Held*, that a verdict for the plaintiff was warranted.

If a juror during the trial of an action of tort on his own initiative privately takes a view of premises, the character of which is an issue at the trial, thus obtaining evidence outside of that introduced in the court room, such conduct does not require a new trial as a matter of law; and where, upon a motion for a new trial based upon such conduct of the juror, the trial judge finds, on evidence warranting the finding, that the conduct of the juror did no harm to the party against whom a verdict was rendered, the judge in his discretion may deny the motion.

If the captain of a tug boat, in whose propeller a hawser has become entangled, while on his way to the wharf of a lighter company whose assistance he is to procure to raise the stern of the tug while the hawser is being disentangled, within the scope of his authority hails the owner of a motor boat and makes a contract with him to take aboard the tug's engineer and, when the lighter company has the stern of the tug sufficiently elevated, to go with his boat beneath

the stern while the tug's engineer removes the hawser; and if, while the owner of the motor boat thus is under the stern of the tug, it falls and strikes the owner of the motor boat because a part of the apparatus negligently used by the lighter company is defective, the owner of the tug is under no liability to the owner of the motor boat for injuries thus received.

Two ACTIONS OF TORT for personal injuries received by the plaintiff on December 3, 1915, under the circumstances described in the opinion, by the falling of the stern of a tug, owned by the defendant in the first action and others, while he was assisting her captain and employees of the defendant in the second action to remove a rope or hawser which had become entangled in the tug's propeller. Writs dated June 15, 1916.

The declarations in both actions contained allegations that on December 3, 1915, the plaintiff "entered into a contract with" the defendant in the first action "to remove a hawser from around the propeller of the tug, which was owned by" that defendant "and operated, controlled and managed by him, his servants, agents, or employees;" and that the plaintiff received his injuries "owing to the joint negligence of the" defendants in the two actions. Further allegations of the declaration in the first action were that the negligence of the defendant therein "consisted in the negligent, careless and improper manner in which the defendant allowed the work of raising the tug . . . to be done, the negligence and carelessness of the defendant in supervising and overseeing the way in which the work was done, in using improper methods to raise said tug, in using improper and defective tools, material and machinery in doing said work and negligence and carelessness of the captain of said tug." The further allegations of the declaration in the second action were that the negligence of the defendant in that action "consisted in furnishing improper and defective material, machinery and tools with which the tug Ida M. Chase was raised, improperly, carelessly and negligently raising of the said tug and negligence and carelessness on the part of the engineer of said defendant in performing his work and negligence of the defendant in employing unfit, improper and inexperienced employees to do the work."

In the Superior Court, the actions were tried together before *Hall,* J. It appeared that the defendant in the first action at the time of the injury to the plaintiff was a subscriber under the

workmen's compensation act, and there was no evidence that the tug was used in interstate commerce. Other material evidence is described in the opinion. At the close of the evidence, the defendants moved that verdicts be ordered in their favor. These motions were denied.

The defendant in the first action requested, among others, the following rulings:

"12. The plaintiff Collins was by virtue of his employment by Dodge the employee of either this defendant or the Packard Dredging Company; if of the former, the plaintiff's rights are determined by the workmen's compensation act or otherwise and this defendant is not liable in this action; if of the latter company, this defendant is not liable and the latter company is.

"13. The test to determine the legal responsibility of the Dredging Company or of this defendant for the conduct of Dodge is whether in the particular service performed by him he continued subject to the control and direction of Splane as to the means to be employed and the result to be achieved or became subject to that of the Dredging Company."

On the subject raised by these requests the judge charged the jury as follows: "If he [the plaintiff] went in there as an employee, why, then, if you should find that he was Splane's employee, I instruct you as matter of law that the workmen's compensation act is a complete defence so far as Mr. Splane's case is concerned," and he left it to the jury to determine whether the plaintiff was an employee or an independent contractor. The jury, as stated below, found for the plaintiff.

The defendant in the second action asked for the following rulings, all of which were refused:

"1. Upon all the evidence and pleadings the plaintiff is not entitled to recover.

"2. That the plaintiff was a trespasser at the time he received the injuries complained of.

"3. That the defendant, the McKie Lighter Company, owed the plaintiff no duty except to refrain from wilfully injuring him.

"4. That as against the defendant, the McKie Lighter Company, the plaintiff was a bare licensee.

"5. That the defendant owed the plaintiff no duty, therefore the plaintiff is not entitled to recover.

"6. That the defendant owed the plaintiff no duty except to refrain from wilfully injuring him.

"7. That the work of raising the Ida M. Chase was not done by or under the direction or control of the defendant, the McKie Lighter Company.

"8. The mere fact that the lighter used in hoisting the Ida M. Chase was the property of the McKie Lighter Company and that the engineer, who operated the engine, by which the Ida M. Chase was hoisted was employed by the McKie Lighter Company is no evidence that the work was being done by or under the control or direction of the defendant, the McKie Lighter Company."

The jury found for the plaintiff in each action in the sum of $10,000. Each defendant then moved for a new trial on the ground described in the opinion. Both motions were denied. The defendants alleged exceptions.

*E. C. Stone,* for the defendant Splane.

*E. I. Taylor,* for the defendant McKie Lighter Company, submitted a brief.

*D. E. Hall,* (*G. H. Mellen & W. B. Keenan* with him,) for the plaintiff.

BRALEY, J. These actions are at common law for personal injuries alleged to have been caused by the negligence of the defendants, who, if responsible, are liable as concurrent tortfeasors. *Feneff* v. *Boston & Maine Railroad,* 196 Mass. 575. And after verdicts for the plaintiff the cases are before us on the defendants' separate bills of exceptions. It is not contended that the plaintiff was careless and on uncontradicted evidence it appears that when injured he was engaged with his motor boat in assisting the engineer of the tug to remove a rope or hawser with which the propeller wheel had become entangled or fouled, and that in order to free the wheel it had become necessary to raise the stern of the tug far enough above the water level to enable the plaintiff to remain underneath while the engineer performed the work. The defendants, also, make no contention, that after the stern of the tug had been elevated sufficiently at the lighter company's wharf, a part of the hoisting apparatus gave way, causing the tug to fall and in its descent to strike and injure the plaintiff.

We first consider the exceptions of the lighter company, hereafter referred to as the defendant. The first request which the judge

refused to give asked for a directed verdict, because on "all the evidence and the pleadings the plaintiff is not entitled to recover." The jury could find that the defendant Splane, acting as "managing owner" and agent for the co-owners, let the tug to the Packard Dredging Company which was to furnish coal, water, oil, and food, while he paid the crew and the captain, who remained in command of the vessel. The wheel having been fouled while the tug was being used by the dredging company, the superintendent of the dredging company directed the captain to go to the defendant's wharf for the purpose already described, and while the tug was on the way, or approached the lighter lying next to the wharf, the captain, observing the plaintiff, engaged him to assist the engineer. It is unnecessary to decide whether the plaintiff was a fellow servant of the captain, or an independent contractor, or whether in making the contract the captain acted as the agent of the defendant Splane or of the dredging company. Whichever view is taken, the jury could say that he was not a volunteer or a trespasser, but lawfully was assisting the engineer, and, being where he had a right to be, the plaintiff is not required before he can recover to prove any contractual relation between himself and the defendant. *Stewart* v. *Harvard College,* 12 Allen, 58, 67. *Hall* v. *Bates,* 216 Mass. 140, 142.

It is further pressed in argument, that as matter of law the acts of the defendant's servants or agents in undertaking to raise the tug were unauthorized and exceeded the scope of their employment. This question however was for the jury who could find that when the tug reached the defendant's lighter the captain went aboard, saw the engineer and "man in charge whose name was Campbell," and told him that the superintendent of the dredging company "had sent him over there . . . for Campbell to hoist . . . the tugboat's stern out and get the line out of the wheel. . . ." And on the evidence of the defendant's vice-president and general manager, that his company had a running account with the dredging company, and that when he first saw the tug he was engaged on other work "some four or five hundred feet away. . . . That what first attracted his attention was that they called to us and said they had a line on the wheel, and wanted us to take it out," to which the witness replied "that he would as soon as he got through with this job, and said nothing more at that time," the

jury further could find that the general manager knew the tug was at the lighter to have the line taken out, and did not refuse to render the services desired "as soon as he got through with this job," but gave no orders to the engineer of the lighter to await his return. It also appeared and could be found that when some two and one half hours later the manager "looked out the back room from his office, . . . and saw the stern half way up in the air, . . . he rushed down, and asked the engineer what . . . he was doing. . . . Don't you know better than this?" But even then the manager, although he saw the men, including the plaintiff, "under the stern," gave no warning to the plaintiff of his peril, or directed the tug which fell about ten or fifteen minutes after he got there to be lowered. It is true that in explanation of his conduct the general manager testified, "if the engineer had not been astraddle of the shaft and Collins under the stern, I should have told the engineer of the lighter to immediately have lowered that boat down, but if I had done so it would have hurt them the same as they were." But the sufficiency of this excuse when he could have warned the plaintiff as well as the engineer of the tug, to move from under the stern, and then have lowered the tug, was for the jury. The testimony of Campbell also was before them, that "he was on the lighter on duty . . . staying there all day, doing all around or ordinary work," and that the general manager "did not tell him to do any work for the company that came along unless he got orders," and that while no orders were given that day "the witness was not supposed to turn away business of the company, but it was not his duty to take it unless he got orders." If all the foregoing evidence is viewed in connection with the further undisputed facts, that the defendant rendered a bill to the dredging company for the services of the general manager, and of its employees, and for the use of the lighter, which has been paid, the jury would be justified in finding that at the time of the accident the defendant had undertaken the work.

It also could be found that if originally Campbell exceeded his authority, his acts were ratified. *Hall* v. *Bates*, 216 Mass. 140, and cases cited. *White* v. *Apsley Rubber Co.* 194 Mass. 97, 99, 100. *Dempsey* v. *Chambers*, 154 Mass. 330, 332, 333.·

Nor should the defendant acting with full knowledge of all the circumstances be permitted to demand and receive the benefit of

the transaction, and then turn around and repudiate its liability. *Hanley* v. *Boston Elevated Railway*, 201 Mass. 55, 57.

The final inquiry, whether there was any evidence of the defendant's negligence, may be disposed of shortly. The jury on ample proof could determine that the hook attached to the block of the tackle holding the sling which had been passed under the stern was so worn, chafed and frayed, that when subjected to the necessary strain it gave way, and that this condition could have been ascertained and remedied by the exercise of reasonable diligence on the part of the defendant's agents and servants. *Hall* v. *Henry Thayer & Co.* 225 Mass. 151, and cases cited.

The defendant, having failed to show any reversible error in the refusal of the first request or of the remaining requests, including the seventh and eight, on which it specially relies, we come to the last exception which rests on the denial of its motion for a new trial, because after the evidence was closed one of the jurors took a private view of the wharf. If on his own initiative a juror takes a view, thus obtaining evidence outside of the evidence introduced in the court room, his conduct does not as matter of law require the trial judge to set the verdict aside. *Chemical Electric Light & Power Co.* v. *Howard*, 150 Mass. 495. *Commonwealth* v. *McCauley*, 156 Mass. 49. *Harrington* v. *Worcester, Leicester, & Spencer Street Railway*, 157 Mass. 579, 582, 583. As was said by Lathrop, J., in *Harrington* v. *Worcester Leicester & Spencer Street Railway, ubi supra*, "It is undoubtedly within the power of the presiding judge in such a case to refuse to grant a new trial, if he is satisfied that the interests of justice do not require that the verdict should be set aside; as, for example, if the conduct of the juror in no way tends to prejudice the party against whom the verdict is rendered." The record in the present case recites that, after the motion was heard, the trial judge, accompanied by counsel for the respective parties, took a view of the premises, and on the testimony of the juror the judge could find that no harm to the defendant had resulted. The finding having been warranted, it is conclusive, and no error of law appears. *Commonwealth* v. *Desmond*, 141 Mass. 200, 202.

The remaining question is whether on the record in the first case a verdict should have been ordered for the defendant Splane.

The jury could find that the captain had authority to hire men

if in his judgment they were needed, subject however to the approval of the defendant, and that after the accident, and upon being informed of the employment of the plaintiff, he ratified or confirmed what had been done. If the plaintiff was an employee, the captain and engineer of the tug whom he was to assist were fellow servants, and the defendant cannot be held responsible for the alleged negligence of the captain. *Rogers* v. *Ludlow Manuf. Co.* 144 Mass. 198, 203, and cases cited.

If, however, it be assumed that the plaintiff is right in his contention that the plaintiff was not a fellow servant but an independent contractor, there is no evidence of the exercise of any supervision or control over him by the captain. The engineer with his tools was taken aboard and placed by the plaintiff under the stern of the tug when raised sufficiently, where he was to remain with his boat until the rope had been removed from the wheel. The captain, who stood on the lighter for the sole purpose of informing the engineer of the lighter company, when the stern of the tug had been sufficiently elevated, did nothing more than to observe whether the plaintiff did what the contract required. The relation between the parties was that of contractor and contractee. *Conners* v. *Hennessey*, 112 Mass. 96. *Morrissey* v. *Boston & Maine Railroad, ante,* 171. The case is not within *Carleton* v. *Franconia Iron & Steel Co.* 99 Mass. 216, which held that the owner or occupant of land is liable in damages to those coming upon it using due care, at his invitation, or to transact business with him, for injuries occasioned by the unsafe condition of the premises which is known to him, or in the exercise of reasonable diligence should have been known to him, and of which he has given them no notice. The premises were not the premises of the defendant, or in his occupation or control, but the lighter and entire hoisting apparatus was owned, controlled and operated by the lighter company which had undertaken to perform the work.

We are unable under the circumstances to perceive the violation of any duty owed to the plaintiff, and the defendant's motion for a directed verdict should have been granted. *Davis* v. *John L. Whiting & Son Co.* 201 Mass. 91, 93.

The result is that in the first case, judgment for the defendant is to be entered, while in the second case the exceptions are overruled.

*So ordered.*