### The National Shawmut Bank of Boston *vs.* William J. McGlinn & others.

Suffolk. November 18, 1925. — January 6, 1926.

Present: Rugg, C.J., Braley, Pierce, & Sanderson, JJ.

*Partnership. Bills and Notes,* Holder in due course, Partnership paper, Renewal. *Estoppel. Practice, Civil,* Interrogatories.

At the trial of an action by a bank against four partners in a general stock-brokerage business upon a promissory note payable to the plaintiff and signed by one of the partners and indorsed by him in the name of the firm, the defence of the partners other than the maker was that the note was made for a loan to the maker only, that his indorsement of the firm name was without authority, and that the plaintiff as payee was put upon notice of these facts. There was evidence that the maker asked for the loan for his firm and that, while the proceeds of the notes were deposited with the plaintiff temporarily in the name of the maker only, very shortly thereafter they were sent to the firm's credit in accounts in New York and Boston. This evidence was contradicted by evidence that with knowledge of the bank officials the money was procured by the maker for his personal use and was used by him to pay a personal debt to one who gave it to his nephew, a member of the firm and codefendant, to be used as his contribution to the firm capital, and that it was thus that it came into the firm's accounts and on the firm's books. *Held,* that

(1) The question, whether the money was lent to the firm or to the individual maker, was for the jury;

(2) Findings were warranted that the defendants must have made inquiry as to the origin of the deposit made to the firm's account, that they learned of the loan made to the individual defendant on behalf of the firm, and that, by accepting the money, ratified the note of the individual partner;

(3) A request for a ruling that ignored the possibility of a finding that the acts of the individual partner were ratified by the other defendants properly was refused.

At the trial of the action above described, it was proper to refuse to rule that, when "a promissory note is signed by an individual and then indorsed in the name of a firm of which he is a member, the presumption is that the proceeds of the note are intended for the personal use of the maker."

In the circumstances, it was proper, at the trial above described, to refuse to rule that when "any individual requests a loan and offers the liability of other individuals as security upon that loan, the individual or corporation upon whom the request is made is bound to make inquiry as to the authority of the individual requesting the loan to bind said other individuals."

CONTRACT for $9,440.60 and interest alleged to be due to the plaintiff as payee and holder of a note for $10,000 of the defendant Charles E. Brickley, indorsed by him before delivery in the partnership name of Charles E. Brickley and Company, the partnership being composed of him and the other defendants, William J. McGlinn, J. Russell Butler and Warren Ackerman.   Writ dated April 29, 1921.

The defendants filed a declaration in set-off for the amount of a deposit made by the partnership with the plaintiff of $740.68 and interest.

Previous to the trial, the defendants other than Brickley propounded interrogatories to the plaintiff to be signed by an officer under oath.   Interrogatory 5 was as follows: "Did the maker of the note declared on receive any consideration for the same?   If your answer is in the affirmative, state what the consideration was and from whom." It was answered: "At the time the Bank received the note in question, it assumed and believed, and still believes, that it had been endorsed with the authorization, if not the actual knowledge and consent of all the partners.   All the partners, therefore, received as consideration whatever benefits flowed from the transaction.   The Bank has no knowledge of the distribution or disposal of the benefits of the transaction, among the partners of C. E. Brickley & Company or otherwise."   Interrogatory 32 was as follows: "Did any of the officers and/or agents of the plaintiff know personally the maker of the note, Charles E Brickley, before the making and indorsing of said note?" It was answered, "Yes." Then followed the following interrogatories, all of which the plaintiff's officer, under advice of counsel, declined to answer:

"33. If you have answered the previous interrogatory in the affirmative, give the name or names of the officer or officers and/or agent or agents of the plaintiff who knew Charles E. Brickley personally before the making and endorsement of said note.

"34. If you have answered interrogatory 32 in the affirmative, state over how long a period such personal acquaintance had extended.

"35. If you have answered interrogatory 32 in the affirma-

tive, state whether or not such personal acquaintance commenced at Harvard College.

"36. If you have answered interrogatory 32 in the affirmative, state whether or not said Charles E. Brickley, the maker of said note was a member of any clubs or societies in Harvard College to which the officer of the plaintiff who negotiated the loan evidenced by the note in suit also belonged.

"37. If you have answered the preceding interrogatory in the affirmative, give the names of such clubs or societies.

"38. Did Charles E. Brickley, the maker of said note, play on a foot-ball team at Harvard College with Robert S. Potter, an officer of the plaintiff?"

The interrogating defendants then moved for further answers to interrogatories 5 and 33–38. The motion was heard by *Wait,* J., and was denied. Those defendants alleged exceptions.

The action then was tried before *Cox,* J. Material findings are described in the opinion. At the close of the evidence, the defendants other than Brickley moved that a verdict be ordered in their favor. The motion was denied. They then asked for the following rulings:

"31. When a promissory note is signed by an individual and then indorsed in the name of a firm of which he is a member, the presumption is that the proceeds of the note are intended for the personal use of the maker.

"32. When any individual requests a loan and offers the liability of other individuals as security upon that loan, the individual or corporation upon whom the request is made is bound to make inquiry as to the authority of the individual requesting the loan to bind said other individuals."

"34. Upon all the evidence the plaintiff did not use due diligence in inquiring as to the authority of the defendant Brickley to bind the defendants McGlinn, Butler and Ackerman."

"39. Upon all the evidence the plaintiff had actual knowledge, suspicion or cause of suspicion that Brickley was negotiating the notes in suit to obtain money or credit for his private use."

"43. The fact that a member of a firm, in connection with

a note for money borrowed, used the form, "I promise to pay," and subscribed his own name and then the firm name underneath it, is a circumstance to be considered by the jury in determining whether the lender had notice that the money was borrowed for the partner's individual use.

"44. As a matter of law, the fact that the name of the firm of the defendants McGlinn, Butler and Ackerman appears on the back of the note is conclusive, in the light of the negotiable instrument law, which everyone is presumed to · know, that the liability of the defendants McGlinn, Butler and Ackerman was but conditional and secondary, and therefore *prima facie* at least that the partnership signature was affixed for the accommodation and benefit of Brickley; and so your verdict must be for the defendant."

"49. If you find that the proceeds of the original note were deposited to the personal credit of Brickley, and were held subject to his sole order, your verdict must be for the defendants McGlinn, Butler and Ackerman."

"52. The fact that Charles E. Brickley and Company received only a part of the proceeds of the loan and that the bank subsequently permitted the rest of the loan to be drawn for other personal purposes of Brickley, is evidence that this was not a loan to the partnership of Charles E. Brickley and Company."

Except as covered in substance in the charge, the foregoing rulings were refused. The judge submitted specific questions to the jury, which with their answers were as follows:

"1. Was the $10,000, loaned to the partnership?" The jury answered, "Yes."

"2. At the time the loan was made, did the plaintiff have notice that the money advanced was not to be used for partnership purposes?" · The jury answered, "No." ·

Material portions of the charge to the jury are described in the opinion. The jury found for the plaintiff in the sum of $11,564.74. The defendants other than Brickley alleged exceptions.

*D. J. Lyne,* for the defendants.

*J. S. Stone,* for the plaintiff.

PIERCE, J.   This is an action of contract brought by the plaintiff to recover the amount due on a promissory note executed by one of the defendants, Charles E. Brickley, and before delivery indorsed "Charles E. Brickley & Co."

The plaintiff alleges that Charles E. Brickley and Company was a copartnership consisting of the defendants Charles E. Brickley, William J. McGlinn, J. Russell Butler and Warren Ackerman.   The three persons, Ackerman, McGlinn and Butler, who alone present these bills of exceptions, filed a single separate answer and are represented by one and the same counsel.   The second bill of exceptions states that "This answer set forth in three paragraphs substantially that the said note was the sole personal and individual obligation of the said Charles E. Brickley and not the legal obligation of the partnership 'Charles E. Brickley & Co.,' or of the defendants, William J. McGlinn, J. Russell Butler and Warren Ackerman."   The further issues raised by this answer, of payment, absence of consideration, and denial of the genuineness of the signature of Brickley (the alleged maker of the note), are not pressed and are assumed to be waived.   The defendants filed a declaration in set-off.   The case was tried to a jury.   The plaintiff had a verdict on its declaration, and a verdict in its favor on the defendants' declaration in set-off.   At the close of the evidence the defendants presented a written motion that the jury be directed to return a verdict in their favor.   The presiding judge denied the motion and these defendants duly excepted.

The following facts disclosed by the reported evidence are not in dispute.   About September 16, 1920, the defendant Brickley organized a partnership consisting of the four defendants, under the firm name of Charles E. Brickley and Company, "to transact a general stock brokerage and commission business and to buy, sell and deal, as principals or brokers, in stocks, bonds, cotton, grain and other securities and commodities."   The business was to "be carried on in the City of New York and at such other places throughout the United States as shall be agreed upon by the parties."   In fact the business was established in New York, Philadelphia and Boston prior to November 4, 1920.

The sixth section (c) of the articles of copartnership provided that "No money except the said drawing accounts shall be drawn by any of the partners, except on a division of profits among them." The sixteenth section of the aforesaid articles contained this provision: " . . . Neither shall the partnership, nor any partner on its behalf, borrow any money for any purpose, unless the same shall be secured by recognized stock exchange collateral sufficient at all times to afford at current market quotations a margin of at least 20%." In substance the articles further provided, section 12, (a) that all transactions shall be "truly and correctly kept in regular books of account" and (d) "Each partner shall at all times have free access to examine, copy and take extracts from all books of account, letters, papers and documents belonging to the partnership."

Robert S. Potter, vice-president of the plaintiff bank, had been connected with it for about eleven years, and as a senior in college had some acquaintance with Brickley when Brickley was a freshman, knew him favorably and had confidence in him. Rejecting all evidence unfavorable to the case of the plaintiff, the evidence warranted the jury in finding the following facts. On November 4, 1920, the defendant Brickley came into the plaintiff bank and said to Potter that he would like to borrow for his firm $10,000, told Potter what he was doing, that he was going to open a Boston office and that it would be an accommodation if the bank would make a loan to the firm. Potter, who had learned in a general way that Brickley was in business in New York, had substantial people with him, and was doing well, replied that he would be very glad to let him have the money. He gave Brickley a note to make out and asked him what to do with the proceeds, what form they would take. Brickley said they would be sent to the credit of the firm in New York. Brickley made out a note dated November 4, 1920, which note was in all respects similar to the note in suit. It was signed by Brickley personally, was payable to the National Shawmut Bank, and before delivery was indorsed Charles E. Brickley and Company. The money was deposited temporarily in the plaintiff bank to the credit of Brickley,

and four or five days later $9,000 was transferred by the National Shawmut Bank to the Bank of America, New York, to the credit account of C. E. Brickley and Company. The jury could further find that, some time after the $9,000 was sent for deposit to the credit of C. E. Brickley and Company, Brickley paid the remaining $1,000 of the money borrowed for the firm into the treasury of Charles E. Brickley and Company in the form of a check for $700 and for $300.

In contradiction of the evidence for the plaintiff, the defendants offered evidence which would have warranted a finding that the loan of November 4, 1920, was a loan to Brickley personally and not a loan to the partnership of which he was a member. Such conclusion of fact could well rest upon the admitted fact that the transaction in this case differed from the usual banking practice when a member of a firm borrows for the firm, in that in such a case it is usual to have the firm sign the note, it is usual when a man borrows for his firm to deposit the proceeds of the borrowing to the credit of the firm, and it is usual for a bank to take collateral to secure a loan to a brokerage firm. A finding that the loan was an individual one to Brickley could be supported by the testimony of Brickley, one Connor, and the defendant Butler that Brickley sought the loan in order to pay Connor $10,000 which he owed him, and that the $10,000 which he borrowed of the bank was paid into the treasury of the firm as a part of a contribution Connor's nephew, Butler, was to make to the capital of the firm. And the jury could further find that Butler was credited in the capital account with $9,000 on November 9, 1921, and with $1,000 on November 9, 1921; and that Potter knew the $10,000 was to be sent to New York to pay the debt owed to Connor.

The answer to the position of the defendants on a motion for a directed verdict is that Brickley, though called by the plaintiff, was not its witness, and that the jury were free to believe the statement of Potter, however much it appeared to be contradicted, that Brickley sought and received the loan for the firm of C. E. Brickley and Company. On the evidence it is plain the jury could disregard the entry in the ledger above referred to, and find that the $10,000 borrowed

by Brickley came to the use and benefit of C. E. Brickley and Company with the firm's knowledge of the source from which it came.

Upon the assumption that Brickley had no authority to borrow the money as he did borrow it, the judge, without exception, charged the jury: "If Mr. Brickley came over here from New York . . . and the bank let him have the money on the paper which he signed, and that money was sent over to New York to this partnership, and remained there and was used by this partnership, then if this partnership knew where that money came from, and the circumstances under which it was obtained, you will then consider whether they did not ratify his act and say in effect, 'What Mr. Brickley did in Boston was all right. We will retain the proceeds of what he did.' If you find that is what they did say, then you would be warranted in finding that they are responsible because of the transaction which Mr. Brickley undertook and consummated here in Boston." The charge in this regard rests upon the familiar rule that a person knowingly cannot receive and retain the benefits and also escape the obligations which flow from unauthorized acts which were declared to be done in the name and on behalf of that person. *Collins* v. *Splane,* 230 Mass. 281, 286. *Tremont Trust Co.* v. *Noyes,* 246 Mass. 197, 207.

The judge further charged the jury: "I intended to and think I did say to you, in substance, that if you find that the note which is sued on here, or the note that was given back of that, the first one, on November 4, was for a personal loan to Brickley, then the plaintiff cannot recover against the other three defendants. I am sure I told you that. If, in addition to that, the plaintiff knew, or had reasonable cause to believe, that the note was Brickley's note, then the result would be the same."

The first request, for a directed verdict, was refused rightly. The jury could find on the evidence of Potter and Brickley that the loan was made to the firm and that the money went into the treasury of the firm. There was no error in refusing requests numbered 31, 32, 39 and 43. The jury could find that the defendants must have made inquiry as to the origin

of the deposit of $9,000 to the firm's credit, and properly could infer that they learned the source from which it came and the fact that Brickley had borrowed $10,000 on behalf of the firm.

The judge could not have ruled, request 44, "As a matter of law, the fact that the name of the firm of the defendants, McGlinn, Butler and Ackerman appears on the back of the note is conclusive . . . that the liability of the defendants . . . was but conditional and secondary, and therefore *prima facie* at least that the partnership signature was affixed for the accommodation and benefit of Brickley; and so your verdict must be for the defendant." It is plain the judge by this request was required to rule in the same breath that this partnership signature was *prima facie* for the accommodation of Brickley, and at once rule that because the signature was *prima facie* for accommodation the jury without further ado must find for the defendants.

We think requests numbered 49 and 52 were sufficiently covered by the charge.

In the consideration of this case we have regarded it in the light the legal question would have presented had the action been upon the original note. What has been said is equally applicable to the renewal note and to this action thereon. The case presents no reversible error.

Without extended discussion of the defendants' first bill of exceptions, we are of opinion the defendants suffered no substantial legal harm by the refusal of the judge to order further answers to their interrogatories. *Cutler* v. *Cooper*, 234 Mass. 307.

*Exceptions overruled.*