# H. F. WILCOX OIL & GAS CO. et al. v. LEWIS et al.

No. 24405.    June 26, 1934.

Withdrawn, Corrected, Refiled, and Rehearing Denied Oct. 1, 1935.

Pierce, Follens & Rucker, for petitioners.

Foster & Merson and Clay M. Roper, for respondents.

McNEILL, J.    This action involves an award of the State Industrial Commission made on January 3, 1933, as applied to permanent partial disability falling under the classification of "other cases."

It appears that the injured employee, referred to as respondent herein, was engaged in a hazardous occupation and received an accidental personal injury on May 8, 1923, arising out of and in the course of his employment. The accident was described on Form 2, employer's first notice of injury, filed with the State Industrial Commission on May 17, 1923, as follows:

"Clothes caught on fire from hot tube on engine burning left side & shoulder & both hands."

The "attending physician's report," filed with the State Industrial Commission on March 20, 1924, described the nature and extent of the injury:

"Both hands burned left side of body from neck to middle of thigh, deep burn."

On April 17, 1924, respondent filed on Form 3, "employee's first notice of injury and claim

for compensation," stating the nature and extent of the injury as follows:

"Permanent disability. Back injured, total loss left arm, partial loss of left leg, internal injuries."

On May 7, 1924, there was filed with the State Industrial Commission report of initial payment of compensation by the insurance carrier showing that compensation had been paid up to May 5, 1924, being 52 weeks of compensation at $15 per week.

On July 2, 1924, respondent filed a petition with the State Industrial Commission requesting a hearing relating to his injury and permanency thereof and requesting a lump sum settlement in the sum of $7,500. Thereafter, there was filed with the State Industrial Commission Form No. 14, being an agreement between employer and employee as to the facts with relation to injury and payment of compensation therefor, reciting that the period of disability from May 8th was indefinite, and that there was permanent partial disability to left arm, estimated at 60 per cent. loss of use, also disability to leg and back. The agreement also recites:

"6. Terms of agreement as to compensation: $15 per week for (No. weeks) 180 beginning May 9, 1923.

"7. Claimant is not able to work at the present time—unable to estimate the date which he will be able to resume work.

"8. The compensation agreed upon herein as above set forth, is in an amount equal to or greater than is provided for by the Workmen's Compensation Act. * * *

"Nature of Expense          Amount
"Medical Services _____ $1095.00
"Hospital Services _____ $1394.70."

The agreement also contains the following:

"The foregoing agreement is herewith submitted for confirmation and approval by said Commission; the order, decision or award of said Commission, under the provisions of section 7, chapter 61, Compiled Statutes of Oklahoma 1921. It is a condition, however, of this agreement that in the event a change in conditions occurs or arises, that the same shall not be final, but may be reopened and reviewed as provided by section 7296, Compiled Oklahoma Statutes 1921."

An approval of settlement was filed with the Commission which recites:

"That the final payment of $2,700, making an aggregate of $2,700 as heretofore paid as compensation in this case, be and the same is hereby approved on this Oct. 25. 1924."

"Specific injury final receipt," Form 8, was filed with the Commission on October 18, 1924, and on this form is indorsed the word "closed." Thereafter, on August 8, 1932, respondent filed a motion to reopen, setting forth that at the time of the settlement, whereby respondent had been paid $2,700, including the payment made to him for temporary total disability, his condition was not at that time exactly known, nor could not be exactly determined, and at that time an estimate of 60 per cent. of loss of use of left arm was the disability finding of the Commission, but that since said time the respondent has continued to grow worse, and instead of having a 60 per cent. permanent partial disability for the loss of use of his left arm and for the loss of permanent partial disability to his body and leg, respondent has practically lost the use of his left arm, and has had such change in condition as to his leg and body that he was at the time of the filing of said motion partially permanently disabled to the extent of 75 per cent. disability. After the hearing the Commission, on January 3, 1933, made an award, in part, as follows:

"(1) That on the 8th day of May, 1923, the claimant was in the employment of the respondent and engaged in a hazardous occupation subject to and covered by the provisions of the Workmen's Compensation Law, and on said date sustained an accidental injury arising out of and in the course of his employment, to wit, an injury to the left arm and body.

"(2) That at the time of said accidental injury the average wage of the claimant was $130 per month.

"(3) That this cause was closed on the 18th day of October, 1924, upon the payment of $2,700 to the claimant.

"(4) That on the 8th day of August, 1932, the claimant filed a motion to reopen this cause and award further compensation and alleging a change in his condition for the worse.

"(5) That since the 18th day of October, 1924, there has been a change in the claimant's condition for the worse as a direct result of the aforementioned accidental injury, and that the claimant has suffered a permanent partial disability and a decrease in his wage-earning capacity.

"(6) That at the time of said accidental injury claimant had a wage-earning capacity of $30 per week or $130 per month and since the accidental injury his wage-earning capacity has been $6 per week, a decrease of $24.

"Upon consideration of the foregoing facts

the Commission is of the opinion that the claimant is entitled to compensation at the rate of $12 per week, computed from May 13, 1923, for a period of 300 weeks in the total amount of $3,600, less the $2,700 heretofore paid."

The contention of petitioners, the employer, and its insurance carrier, for grounds of setting aside this award, are summarized in their brief as follows:

"(1) It abrogates an agreement between the parties entered into in accordance with the statute and approved by the Commission.

"(2) In fixing the rate of compensation effective as of May 8, 1923, it strikes from consideration the fact that a prior award was made by the Commission, pursuant to agreement between the parties, and amounts to a retrial of the issues previously determined by the agreement and award approving same.

"(3) The award complained of attempts to modify and change the rate of compensation from the date of the accident and not from the date of the 'change in condition.'

"(4) The Industrial Commission has no authority to reopen an award under the 'other cases' provision after the expiration of three hundred (300) weeks.

"(5) The findings of fact fail to show jurisdiction in the Commission to reopen this case, in the absence of any findings that the 'change in conditions' occurred during the three hundred (300) weeks period.

"(6) There is an entire absence of competent evidence sustaining the findings of the Commission with relation to 'earning capacity' and 'change in conditions'."

The disability in question is permanent partial disability and falls under the provision of "other cases," section 7290, C. O. S. 1921, the injury occurring prior to the effective date of the amendment thereto in 1923. Section 7290, supra, provides the schedule of compensation for the following disabilities, to wit: (1) Permanent total disability; (2) temporary total disability; (3) permanent partial disability; (4) temporary partial disability. The applicable section is not in dispute.

The paragraph, "other cases," covers that class of disability which ordinarily cannot be fully compensated under the specific schedule awards enumerated under the preceding paragraphs of 7290, supra. Under "other cases," prior to the amendment in 1923, the schedule of compensation was not based upon the difference between the employee's former and subsequent wages, but upon 50 per centum of the difference between the employee's former average weekly wages and his wage-earning capacity thereafter in the same employment or otherwise. The compensation for the disability under "other cases" shall be payable during the continuance of such permanent partial disability, "not to exceed 300 weeks," but at all times subject to reconsideration of the degree of the impairment of the wage-earning capacity of the employee by the Commission on its own motion or upon application of any party in interest. For this specific character of disability there is no limitation as to when such disability may begin. There is no language or phraseology to be found in that paragraph which attempts to limit and restrict such disability to so many continuous successive weeks next succeeding the date of the original injury, or from the commencement of any specific disability or schedule award. The limitation is upon the total weekly payments for such factual disability and not upon the period of time within which such disability may be compensated.

That language cannot be strained and enlarged upon to mean a 300-week period of time, as contended for by petitioners, to the exclusion of a break or interruption. The disability, permanent partial, is compensable for the full number of individual and separate weeks which may exist covering such weeks of permanent partial disability. The integer of time constitutes 300 separate weeks of such disability, and not a fractional part of the 300 weeks of such disability, if in truth and in fact the same actually exists. This disability, partial in character and permanent in quality, is in fact a change in the condition of the original injury. It is another distinct disability resulting from the original injury, for which disability the injured employee is entitled to additional compensation for as long a time as such disability at any time may exist, irrespective of the particular date of its commencement, intermittently ceasing, or stopping, or its recurrence. Such payment to be limited to not more than 300 weeks for such disability without regard to the actual period of time encompassed by said 300 weeks.

Any particular designated disability set forth in section 7290, supra, may not in every instance be continuous to the exclusion of an interruption, without a break in the continuous successive weeks next following the commencement of such disability. Medical expert testimony is not infallible. Conditions have been known to change whereby those who were thought to

be permanently disabled have subsequently been found to be completely recovered, and vice versa.

In case of temporary total disability 50 per centum of the average weekly wages shall be paid to the employee during the continuance thereof, "but not in excess of 300 weeks." For instance, an employee, after receiving 50 weeks of temporary total disability payments, returns to work for his employer upon medical expert advice. He works at his former employment for one week, and then is compelled to quit temporarily by reason of disability. The Commission, upon the facts and competent medical expert testimony, finds that the employee is again only temporarily totally disabled, attributable to original injury, and makes a second award for temporary total disability for another 50 weeks in accordance with the facts. It cannot be urged with confidence that the meaning of the statute, section 7290, supra, would warrant an interpretation that such employee could not receive a second award for temporary total disability by reason of the intervening break or interruption in the disability after it had commenced in the first instance.

The word "continuance" does not necessarily mean uninterrupted.

In the case of In the Matter of the Claim of William Eppenstein, Respondent, v. Ogden R. Adams & Co., Inc., et al., 224 App. Div. Rep. (N. Y.) 332, on page 333, it is said:

"There is no question raised concerning the manner in which the award in question was calculated. The precise question is. Did his temporary total disability continue? There is more than one significance of the word 'continue.' What that is must depend upon the context. The subdivision is entitled and must, therefore comprehend 'protracted' disability —disability drawn out—not necessarily uninterruptedly. 'Continues' in the context is apparently used as a synonym for 'protracted' as the opposite of stop for the disability stops or continues. The subdivision contemplates a temporary total disability drawn out longer than 32 weeks, not necessarily weeks that immediately follow each other. The contention of the appellants, therefore, must be that in order to warrant compensation, the effects of the injury must be continuous to the exclusion of any interruption, no matter for how short a time—so the break be substantial. If such was the purpose of the lawmakers, then being able one day subsequent to the injury destroys

the continuance of the disability. This does not seem to me to have been the intention of the Legislature. To continue means to keep on. (Century Dictionary.) Wherever there are interrupted consequences of a cause, the cause is continuing and if the cause continues and it produces the same result it ought to be permissible to claim that any result from the cause also continues.

" 'A continuing offense is a transaction or a series of acts set on foot by a single impulse, and operated by an unintermittent force.' 2 Words & Phrases (1st series) p. 1510; Whart. Crim. Pl. (8th Ed.) sec. 474; Bibb v. State, 83 Ala. 84, 3 So. 711.

"The Vice-Chancellor, in Wood v. Sutcliffe (8 Eng. L. & Eq. 217, 220) says: 'I have used the term "continuous injury." By "continuous" I do not mean never ceasing, but of recurring at repeated intervals, so as to be of repeated occurrence * * * as an actual continuous mischief would be.' Undoubtedly in some uses, perhaps the ordinary one, 'continue' signifies to keep on without interruption. In the case at bar, however, under the spur of interpreting the Workmen's Compensation Law so that the injured may receive compensation for temporary total disability, the law should have a liberal instead of narrow interpretation. The statute contemplates that a person under such temporary total disability shall be compensated for more than 32 weeks and for as long a time as is provided by subdivision 3 of section 15 of the Workmen's Compensation Law. This is for 25 per cent. of his earning capacity for not to exceed 205 weeks."

The Supreme Court of Massachusetts, in the Paternos Case, 266 Mass. 323, 165 N. E. 391, considered a case where an employee was injured October 1, 1917, and was paid 50 weeks' specific compensation for the amputation of his hand. In addition, he was paid compensation for total disability to March 18, 1918, when he returned to work. His wages after his return were the same as before the accident and subsequently increased. In February, 1928, the employee was awarded total compensation from November 15, 1927, being almost ten years after the accident, and at which time the period of 500 weeks from the date of the injury had expired. It was contended in that case by the employer that compensation for total incapacity occurring more than 500 weeks after the date of the injury could not be awarded under the statute. In the body of the opinion it is said:

"In our opinion the decree in favor of the employee was entered properly. The 'period' for which compensation is to be paid does not require that compensation shall be received continually and without interruption. Hunnewell's Case. 220 Mass. 351, 355, 107 N.

E. 934. After a period of total incapacity there may be a period of partial incapacity, followed by another period of total incapacity. For incapacity, partial or total, the employee may be awarded compensation. Jameson's Case, 254 Mass. 371, 150 N. E. 151. It would seem that the difference in the phraseology of the sections of St. 1911, c. 751, part 2, secs. 9, 10, as amended, dealing with total and partial incapacity, indicated a legislative purpose that the period of total incapacity was not to be limited to the period of 500 weeks from the date of the injury. The change in the language of the section relating to partial incapacity in St. 1919, c. 205, to some extent points to the same conclusion. The statute provides that payment is to be made 'while the incapacity for work resulting from the injury is total,' limiting the period to 500 weeks, without restriction as to the time when the period begins, and there is nothing in the act which requires us to hold that, if total incapacity should develop more than 500 weeks after the injury, the employee could not recover compensation. An award made after the 500 weeks had passed would be consistent with the language of the statute, and neither the word 'period' nor the statement as to weeks compels the construction that the time must begin to run at the date of the injury, as the insurer contends."

Compensation for the continuance of partial disability, not to exceed 300 weeks, should not be restrictively construed to mean that 300 weeks must follow each other successively. Otherwise, the "other cases" paragraph in many cases would be nugatory and inoperative. It would be a hardship imposed upon a faithful injured employee not contemplated or intended by the Workmen's Compensation Law. Such an interpretation would be unfair to the workman. His common-law rights have been denied to him by reason of the Workmen's Compensation Law. From his standpoint he is entitled to a liberal interpretation of its provisions.

The purpose of payments of compensation is based largely, if not exclusively, upon the theory that there is a loss of wage-earning capacity. These payments for compensation are based in theory at least upon the assumption that the employee is actually earning wages at the time of his incapacitation. The payments of compensation under any degree of disability are contingent upon the continuance of incapacity, except in the case of specific injury.

We fully appreciate the fact that the "other cases" paragraph has been perplexing; that in a few cases we have expressed views which are not in complete harmony with the rule herein expressed. We have endeavored herein to clarify what we have considered to be the proper rule under "other cases." The following cases, to wit: Magnolia Pet. Co. v. Allred, 160 Okla. 126, 16 P. (2d) 78; Industrial Track Construction Co. v. Colthrop et al., 162 Okla. 274, 19 P. (2d) 1084; Stanolind Pipe Line Co. v. Hudson, 163 Okla. 73, 20 P. (2d) 1037, in so far as said cases conflict with the views herein expressed are specifically overruled.

As we construe this award of January 3, 1933, the Commission finds that from October 18, 1924, respondent has suffered a change in condition for the worse, as a direct result of the original injury. The serious question presents itself as to the correctness in computing the compensation which was ordered to be paid. It appears that the Commission directed compensation payments from May 13, 1923, five days after the injury, for 300 weeks, at the rate $12 per week, totaling $3,600, less $2,700 heretofore paid. The aforesaid agreement recited that the period of disability from May 8, 1923, was indefinite, and that there was a permanent partial disability to the left arm estimated at 60 per cent. loss of use, and in addition thereto disability to the leg and back. This agreement provided for compensation at the rate of $15 per week for 180 weeks beginning May 9, 1923.

The facts are not disputed that respondent was in the hospital one year and eight days from the date of the injury on May 8, 1923. During that time, it is apparent that his disability was temporary total, and not permanent partial disability. Permanent partial disability, as found by the Commission, commenced October 18, 1924. It is not contended that there was any earning capacity from May 8, 1923, to October 18, 1924. It is thus apparent that temporary total disability should be compensated from May 13, 1923, to October 18, 1924, being a period of 74 weeks and 4 days. The agreement provides for 180 weeks compensation at $15 per week. If 74 weeks is calculated as temporary total disability, which respondent received from such settlement from May 13, 1923, to October 18, 1924, there would remain 106 weeks of said 180 weeks as compensation which was heretofore paid on permanent partial disability. The respondent is entitled to 300 weeks of weekly compensation payments for permanent partial disability under the record.

The settlement on its face shows that little, if any, consideration was given to permanent partial disability. The compensation which was paid was based upon 60

per cent. loss of use to the left arm and for 30 weeks to injury of the leg and body. Under the schedule, for compensation, since the amendment of 1923, which we consider only for analysis, respondent would be entitled, under specific injuries, for the loss of arm, 250 weeks. Sixty per cent. of 250 weeks for percentage of loss of use of arm would be 150 weeks' compensation. The schedule for the loss of a leg is 175 weeks.

Another factor in determining whether or not the settlement included compensation for permanent partial disability is found in reference to the amount of compensation which had been agreed upon, to wit, $15 per week for 180 weeks. The wages received by the injured employee was $130 per month. The rate of compensation figured by the settlement excludes any reasonable theory that respondent was paid anything for permanent partial disability. Under permanent partial disability, the compensation under "other cases" was 50 per cent. of the difference between his average weekly wages prior to the time of his injury and his wage-earning capacity subsequently thereto. In the light of that calculation the earning capacity would of necessity be nil when figured under permanent partial disability for any period of the 180 weeks for which compensation was paid in the lump sum settlement.

When the Commission specifically found that respondent since the 18th day of October, 1924, has suffered a permanent partial disability, and reconsidered the degree of impairment, such reconsideration should cover only that time during which compensation had not been paid. Respondent, the Commission, and petitioner, or either of them, had the right, at all times, to test the wage-earning capacity of respondent. All of the parties agreed, including the Commission, that the compensation which should be paid was $15 a week for 180 weeks. Had either of the parties sought to change that rate of compensation, it should have done so prior to the expiration of 180 weeks for which compensation had been paid in the lump settlement. The Commission found that the wage-earning capacity had decreased and that the respondent was entitled to the compensation at the rate of $12 per week from May 13, 1933, for a period of 300 weeks.

There is competent evidence to establish that respondent has suffered a change in his condition from the time of the approval of said agreement, October 18, 1924, as a direct result of the original injury, and that at the time of the rendition of said award on January 3, 1933, he was permanently partially disabled to a greater extent than he was at the time of the approval of said agreement when compensation payment in the lump sum of $2,700 was made to respondent. There is medical expert testimony to support a change in percentage of permanent partial disability. In fact, there was competent evidence to support an award for permanent total disability.

Under the order and award the respondent was awarded compensation for permanent partial disability for a period of 300 weeks, commencing May 13, 1923. In effect, this award denied compensation for temporary total disability from May 13, 1923, to October 18, 1924, the date the Commission found said permanent partial disability commenced, but the respondent did not seek a review of said award, and under such circumstances, the same became binding and conclusive on said respondent.

Award affirmed.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, BUSBY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur.