FARMERS UNION CO-OPERATIVE ASS'N et al. v. LEEMHUIS et al.

No. 31288. March 28, 1944.

Rehearing Denied April 25, 1944.

*147 P. 2d 989.*

Cheek, Gibson, Savage & Benefield, of Oklahoma City, for petitioners.

Milton Keen, of Clinton, and Mac Q. Williamson, Atty. Gen., for respondents.

RILEY, J. The petitioners seek vacation of an award of the State Industrial Commission entered December 30, 1942, favorable to Herman Leemhuis. Compensation under the award was at the rate of $8 per week, and was continuing for 299 weeks and one day from November 6, 1942, and it was based upon an injury to the workman's back.

It is agreed that the provision of section 13356, O. S. 1931, is applicable for calculation of the award. Thereby provision is made for such an award for a two-thirds decreased wage-earning capacity, limited to 300 weeks.

In the year 1938 the workman was paid, on account of the injury, compensation for five days, as being temporarily totally disabled.

For reversal, the petitioners urge that there is no competent evidence to show, resulting from the accidental injury occurring on May 20, 1938, (1) a permanent partial disability; or (2) that claimant's wage-earning capacity has been reduced; or (3) that the reduction in wage-earning capacity, if any, is attributable to the injury.

The workman-claimant seeks by cross-petition modification of the award, and contends (1) compensation should have been awarded as of and from July 15, 1939, the date claimant's wage-earning capacity was reduced—the date claimant quit work on account of the disability; and (2) compensation should have been fixed at the rate of $8.66 per week instead of at the minimum amount of $8.

On May 20, 1938, Leemhuis was in-

jured while employed by the Farmers Union Co-operative Association, engaged in the mill and elevator business, a hazardous undertaking. Thereafter the manager sent the injured employee to a doctor at Clinton (Dr. Cushman), who reported a sacro-iliac back sprain, and lumbo-sacral sprain, due entirely to the injury. The employee was discharged by the doctor on May 30, 1938. Compensation was paid and approved on August 8, 1938, for temporary total disability, and the workman returned to his labor at his usual rate of pay until July 15, 1939, same being approximately 15 months, when he ceased to so labor, to enter into the restaurant business, he having purchased, with his sister, a cafe in Clinton. During the previous intervening period of time, while engaged in hazardous employment, claimant could not lift or do heavy work but suffered back pains, and other employees, under direction of the manager of the elevator, substituted for claimant so that he could remain upon the pay-roll of petitioners, doing light jobs.

For a long time after May, 1938, petitioner received no medical attention. Then he was attended by a chiropractor, and finally Dr. Tisdal and Dr. Lingenfelter, whose qualifications were admitted. They diagnosed the case and found a compression fracture of the vertebrae and a rupture of the intervertebral disc attributable and attributed to the accidental injury of May 20, 1938. These doctors found a disability of from 40 to 50 per cent permanent total, rendering claimant unable to perform manual labor.

Prior to the injury, claimant earned $65 per month. Evidence of record shows he is now incapable of earning more than $2 per week, at his usual vocation.

The trial commissioner, after hearing, found that claimant suffered a permanent partial disability to his back attributable to his injury, with the result of decreased earning capacity from and after August 1, 1939 (two weeks after claimant quit work), and entered an award for compensation for 299 weeks and one day at the rate of $8 per week.

On appeal to the commissioners en banc, the award was modified as to commencement of the decreased earning capacity, and it was fixed as of November 6, 1942 (the date of the last hearing before Commissioner Snow), and claimant's motion for revision of the date of July 15, 1939 (when claimant ceased to perform his hazardous work), was denied and both parties appeal.

The present attorneys for petitioners did not appear in the original hearing, but did present the case to the commissioners en banc. The original briefs filed on behalf of petitioners and respondent materially conflict in statements of fact. In the reply brief, petitioners deny intentional misrepresentation of fact and rely upon the record and seek to stress the effect of cross-examination of witnesses for the claimant. Among such statements are those "that claimant continued to work for the same employer at the same job." (The record shows that the lighter duties were provided for the claimant.) "He wanted to quit work so as to operate a cafe." (This statement presents a matter of intention. The fact is that claimant did quit work, and in view of his right to compensation in lieu of that which his employer for the time being paid him, that is, full pay subject to termination at will, it may be that claimant acted wisely.) "There is in his testimony evidence that claimant began to have trouble with his back, or had some injury after he had gone into the cafe business." (This statement is in error both as to beginning of claimant's back trouble and as to compensation he has now claimed.) ". . . The testimony of claimant evidences recent injuries, although not admitted by him." (The statement is contradictory in its terms and is wholly unsupported by anything contained in the record.) There are other similar conflicts in the statements of fact.

While claimant's income from his cafe business was $85 per month, and more

than his wages paid by the Farmers Union Co-operative Association, $65 per month, nevertheless his cafe income should not be considered wage-earning capacity. It is generally held that income from an employee's capital interest in a business conducted by him after an injury should not be taken into consideration in determining his average weekly wage or earnings after the injury. 88 A.L.R. 633. Income or profits from business are not the fruits of wage-earning capacity, but of thrift and investment. ". . . Profit from his business is in no sense," says the New York court in McCann v. McCormack's Garage, 203 App. Div. 387, 197 N.Y.S. 19, "a measure of his wage-earning capacity." And such is the rule in Massachusetts (Federico's Case, reported in 88 A.L.R. 633, ante); and in Kansas (Moore v. Peet Bros. Mfg. Co., 99 Kan. 443, 162 P. 295).

Where, however, the rule is modified to the extent that in event the injured employee personally performs a part of the work in business conducted by him after his injury, any portion of his income traceable to such work is considered the same as wages.

Herein the record shows such work performed by claimant in the cafe business to be of the value of $2 per week; theretofore he had earned $15 per week. His decreased wage-earning capacity was $13 per week. Claimant is entitled to two-thirds of the difference in wage-earning capacity, or $8.66 per week, not to exceed 300 weeks. H. F. Wilcox Oil & Gas Co. et al. v. Lewis et al., 173 Okla. 640, 49 P. 2d 782.

From an examination of the record it is our view that ample evidence is afforded by the record to justify revision of the date of the beginning of claimant's disability. The finding is revised to fix that date as of July 15, 1939, and the award of compensation is amended accordingly. Skelly Oil Co. v. Harrell et al., 187 Okla. 412, 103 P. 2d 88; Keck et al. v. Wilson et al., 184 Okla. 138, 85 P. 2d 757; Atlantic Refining Co. v. Allen et al., 185 Okla. 194, 90 P. 2d 659.

As amended, the award is sustained.

CORN, C.J., and OSBORN, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur.